**Vinod K. AGGARWAL, Plaintiff,**

v.

**SECRETARY OF STATE OF THE UNITED STATES, et al., Defendants.**

**Civil Action No. H–96–1255.**

United States District Court, S.D. Texas, Houston Division.

Dec. 31, 1996.

Peter D. Williamson, Houston, TX, for Plaintiff.

Pauline Terrelonge, Office of Immigration Litigation Civil Division, Department of Justice, Washington, D.C., Howard E. Rose, Special Assistant U.S. Attorney, Southern Dist. of Texas, Houston, TX, for Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S MEMORANDUM AND RECOMMENDATION

LAKE, District Judge.

The Court has reviewed the Magistrate Judge's Memorandum and Recommendation, signed December 9, 1996 (Docket Entry No. 17), along with the objections thereto. The Court is of the opinion that said Memorandum and Recommendation should be adopted by this Court.

It is, therefore, **ORDERED, ADJUDGED and DECREED** that the United States Magistrate Judge's Memorandum and Recommendation (Docket Entry No. 17) is hereby **ADOPTED** by this Court. Accordingly, Plaintiff's claims against all Defendants are hereby dismissed.

## MEMORANDUM AND RECOMMENDATION

JOHNSON, United States Magistrate Judge.

Pending before the court is Defendants' Motion to Dismiss or Alternative Motion for Summary Judgment (Docket Entry No. 8).[1] For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion be **GRANTED.**

### I. Case Background

In this immigration case, Vinod K. Aggarwal ("Vinod") is suing three Defendants: (1) the Secretary of State of the United States, in his official capacity ("Secretary of State"); (2) the Attorney General of the United

---

1. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Fed. R.Civ.P. 72. Docket Entry No. 11.

States, in her official capacity ("Attorney General"); and (3) an unnamed "American Consul, New Delhi, India," individually and in his/her official capacity ("Consular Officer").[2] Aggarwal is seeking immigration visas for his alleged wife, Sita Aggarwal ("Sita"), and four children (Shalini, age 19; Ashish, age 17; Vasudha, age 16; and Neeraj, age 11),[3] all five whom are natives and citizens of India.

Vinod is a forty year-old native of India who immigrated to the United States and married a United States citizen, Beverly Green ("Green"), on November 29, 1982. *See* Complaint at para. 11 & Exh. 1. One day later, on November 30, 1982, Green filed an application for Vinod to be granted lawful permanent resident status ("LPR status"), which the Immigration and Naturalization Service ("INS") granted. *Id.* at para. 11. On March 10, 1988, Vinod applied for naturalization as an American citizen, which status he received on October 18, 1988. *Id.* at para. 12 & 13. Four months after his naturalization, on February 15, 1989, Vinod and Green divorced. *Id.* at para. 14 & Exh. 7.

Vinod alleges that one month after his divorce, on March 29, 1989, he married Sita in India. *Id.* at para. 14. Vinod and Sita registered their allegedly new marriage with the Indian authorities one week later, on March 29, 1989. *Id.* at Exh. 6. When Vinod and Sita married, Sita had four children, born between 1976 and 1985 and whom are in part the focus of this lawsuit. *Id.* at para. 15 & Exh. 7. It is undisputed that Vinod is the biological father of the four children.[4]

In an effort to have Sita and the children join him in the United States, Vinod filed an immediate relative petition (also referred to as a "form I–130") with the INS for the benefit of each member of his family on an unspecified date in 1989. *Id.* at para. 15. Obtaining such a petition is generally the initial step in the immigration process for family members.[5] 8 U.S.C. § 1154(a). The INS approved the petitions on an unspecified date. Where the INS approves a petition such as occurred here, the alien beneficiary may then apply to a consular officer for an immigrant visa. 22 C.F.R. §§ 42.61 *et seq.* Without a visa, the beneficiary may not enter the United States. 8 U.S.C. § 1181(a).

Here the American Consular Office in New Delhi, India has continually refused to issue visas to Sita and the children. Defendants allege that Vinod fraudulently obtained his citizenship by marrying Green. According to Defendants, Vinod and Sita had actually married in 1974 and never divorced. Accordingly the Vinod–Green marriage, which existed from 1982 to 1989, was bigamous.

Specifically, Sita and the four children each applied for an immigrant visa at the United States Embassy in New Delhi, India on an unspecified date. *See* Complaint at para. 16. In a letter dated March 13, 1990, the American Consular Officer denied the visa applications based on improper documentation, as follows:

> This office regrets to inform you that it is unable to issue a visa to you because you have been found ineligible to receive a visa under the following sections(s) of the Immigration and Nationality Act:

> Section 221(g) which prohibits the issuance of a visa to anyone who has failed to present the documents requested in connection with the visa application. If you fail to present the document(s) requested below within one year, your application for an immigrant visa will be canceled and any

---

**2.** It is not clear from Plaintiff's complaint whether one or more consular officers took the disputed actions. However, for purposes of clarity in its discussion, the court will presume that one officer is involved.

**3.** Shalini was born December 20, 1976; Ashish was born December 27, 1978; Vasudha was born September 14, 1980; and Neeraj was born July 13, 1985. *See* Complaint at Exh. 4 & 9.

**4.** Neeraj was born during the Vinod–Green marriage (on July 13, 1985). The births of the remaining three children pre-dated the Vinod–Green marriage.

**5.** Citizens, lawful permanent residents, and employers may file petitions seeking INS authorization for the immigration of aliens falling within various preference categories (such as a family or employment preference). *See* 8 C.F.R. §§ 204.1 *et seq.*

petition approved in your behalf will be returned to the [INS].

\* \* \* \* \* \*

You have been found ineligible under this (these) ground(s) of ineligibility because: "admin. processing" [handwritten entry]

*Id.* at para. 16 & Exh. 2.

Although Plaintiff's complaint is silent regarding whether Sita and Vinod attempted to remedy the documentation shortcomings, most likely (in light of filing this suit) they were unable to provide sufficient documentation to overcome the consular's concerns. However, on April 22, 1992, the Consular Officer again denied the visa applications, citing additional reasons for the denial including fraud in the Vinod–Sita marriage. *Id.* at para. 17 & Exh. 3. The denial letter provided in relevant part:

> This office regrets to inform you that it is unable to issue a visa to you because you have been found ineligible to receive a visa under the following section(s) of the Immigration and Nationality Act. The information contained in the paragraphs marked with "X" pertain to your visa application. Please disregard the unmarked paragraphs.
>
> \* \* \* \* \* \*
>
> Section 212(a)(5)(A) which requires that labor certification be obtained for all persons who do not have a petitionable family relationship.
>
> \* \* \* \* \* \*
>
> Other: You [Sita] have stated that although you have registered a marriage under the Hindu Marriage Act, 1955, no Hindu marriage ever took place. In accordance with the provisions of the Hindu Marriage Act, 1955, this would indicate that you are not married to the petitioner [Vinod].

*Id.* at Exh. 3. Also in this 1992 denial letter, the Consular Officer stated that he was returning the petitions to the INS for revocation. *Id.* at Exh. 3.

Following the 1992 denial of the visas, Vinod hired his present counsel. *Id.* at para. 18. In 1993, Vinod (henceforth acting through his attorney) made repeated inqui-ries to the INS, the American Consul in New Delhi, and the State Department regarding the denial and seeking their assistance. *Id.* at para. 19–24 & Exh. 5–9. However, Vinod obtained both no responses and, in his opinion, unsatisfactory responses to his inquiries.

Next, on February 18, 1994, Vinod (without having resolved the problems with the first petitions and visa applications) once again applied to the INS for immediate relative petitions for Sita and the four children. *Id.* at para. 25 and Exh. 10 & 11. On June 9, 1994, the INS approved the second petitions and, in the ordinary course of business, then forwarded the approved petitions to the Department of State Immigrant Visa Processing Center to process the visas for Sita and the four children with the appropriate consular office. *Id.* at para. 26 & Exh. 11.

In a letter dated November 16, 1994, the American Consular Officer in New Delhi denied issuing visas pursuant to the new petitions. *Id.* at para. 27 & Exh. 12. The Officer based the denial on Section 221(g) of the INA and returned the petitions to the INS, stating the following:

> Your petitions appear to have been approved in error in that there is no indication that the INS has reviewed this Section's memorandum of May 5, 1992 returning your previous petitions for reconsideration. Moreover the petitions appear defective in that it appears that [Vinod] obtained his LPR status (and, ultimately, U.S. citizenship) through a bigamous marriage to a U.S. citizen, since he never divorced Sita Aggarwal; and because there was no religious ceremony in 1989 meaning there was no marriage performed under the Hindu Marriage Act. As a result we must suspend action on your applications and return the petitions to the INS for review. When we receive word from the INS we will contact you.

*Id.* at Exh. 12.

Next, on January 27, 1995, Vinod wrote a letter to the Visa Office of the United States Department of State outlining his actions regarding the petitions and visas and seeking its intervention to obtain the visas. *Id.* at

para. 28 & Exh. 13. The State Department responded to Vinod's inquiry in a letter dated March 26, 1995, as follows:

> We have received a report from the Embassy in New Delhi which outlines the reasons for the post's referral of these cases back to the [INS]. According to the report, there is serious concern about the validity of the petitions. The memorandum from the Embassy to the INS requesting review clearly establishes: that Vinod Aggarwal married Sita Aggarwal in 1974 and never divorced her; that Vinod Aggarwal thereafter bigamously married Beverly Green in the US and so fraudulently obtained his legal permanent resident status (and ultimately his US citizenship); that Vinod Aggarwal and Sita Aggarwal later registered a marriage under the Hindu Marriage Act without having perfored [sic] the required Hindu religious ceremony, meaning that they are not legally married under Indian law. The petitions appear invalid because the petitioner's status, and his standing to file, is in question.

> The Embassy notes in its report that there was no indication that this information was taken into account by the INS in the adjudication of the second batch of petitions that Mr. Aggarwal filed. Had the adjudicating officer been aware of the points raised by the Embassy in its 1992 memorandum, the officer would have denied the petitions. The post will notify Mrs. Aggarwal upon receipt of a response from the INS at which point further action on the cases can be taken.

*See* letter to Peter D. Williamson from Elizabeth J. Berube (Chief, Written Inquiries Branch), attached to Complaint at Exh. 19.

Also, on February 11, 1995, while awaiting the State Department's response to his January inquiry, Vinod contacted the INS requesting a copy of a "request from the [Department of State] that the [first] petitions be reviewed." Complaint at para. 30 and Exh. 15. Though it is not clear to the court specifically what document Vinod sought to obtain, it appears that the INS declined to provide it. *Id.* at para. 30.

It is not clear to the court what, if any, action Vinod undertook after receiving the March 26, 1995 response from the State Department. Vinod makes no allegations regarding any activity for the duration of 1995 and first several months of 1996. However, having failed to obtain visas for Sita and the four children through administrative means, Vinod filed the present lawsuit on April 19, 1996.

In this action Vinod seeks (1) judicial review of all administrative actions to date and (2) injunctive relief, whereby the court orders the American Consul in New Delhi, India to issue immigration visas to Sita and the four children. Defendants claim that the court lacks subject matter over this lawsuit and that Vinod has failed to state a claim, seeking dismissal under Fed.R.Civ.P. 12(b)(1) & (6). Alternatively, Defendants move for summary judgment pursuant to Fed.R.Civ.P. 56.

## II. *Motion to Dismiss Standard*

Rule 12(b)(1) permits dismissal of an action where no subject matter jurisdiction is available. A motion under Rule 12(b)(1) may be decided on any of three bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996). Here Defendants are making a facial motion, attacking the complaint on its face.

Rule 12(b)(6) sets forth that dismissal of an action is appropriate whenever the complaint fails to state a claim upon which relief can be granted. A motion under Rule 12(b)(6) is to be decided on the face of the complaint. *Landry v. Air Line Pilots Ass'n Int'l,* 901 F.2d 404, 435 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).

In considering a motion to dismiss, whether on the ground of lack of jurisdiction on the subject matter jurisdiction based on a facial attack or for failure to state a cause of action, the trial court should view the allegations in the complaint in the light most favorable to the pleader and accept as true all well-pleaded facts in the complaint. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Mitchell v.*

*McBryde,* 944 F.2d 229, 230 (5th Cir.1991). Dismissal of a complaint is improper unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *In re Burzynski,* 989 F.2d 733, 739 (5th Cir.1993).

### III. Analysis of Defendants' Motion

As bases for the trial court's subject matter jurisdiction over this case, Plaintiff relies on: (1) 28 U.S.C. § 1331, the federal question jurisdiction statute; (2) 5 U.S.C. § 702, the Administrative Procedure Act; (3) 28 U.S.C. § 1361, the federal mandamus statute; (4) 8 U.S.C. § 1329, the Immigration and Nationality Act ("INA"); and (5) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), which supports a private cause of action against a federal government official for violating a constitutional right. Defendants argue that the statutes do not provide a sufficient basis for the court's jurisdiction and that Plaintiff has failed to state a claim under *Bivens.* The court agrees.

### A. Nonavailability of Judicial Review of Visa Denials

■ Plaintiff seeks judicial review of the consular officer's denial of the visas. However, such judicial review is not permissible.

All phases of immigration, including the regulation of aliens and naturalization, are guided by Congress. *See Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). Aliens may not enter the United States except as provided in the INA and the regulations promulgated thereunder. 8 U.S.C. §§ 1101 *et seq.;* 8 C.F.R. Parts 1 *et seq.;* 22 C.F.R. Parts 40–45. According to statute, various executive agencies, including principally the Department of State and the Justice Department, regulate the entry of aliens. *Id.* The INA grants authority over the issuance of visas to United States consular officers.[6] 8 U.S.C. §§ 1104(a) & 1201–1202.

It is well settled that judicial review of a consular officer's denial of a visa is beyond the reach of the courts. *See, e.g., Centeno v. Shultz,* 817 F.2d 1212, 1213 (5th Cir.1987) (per curiam), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 696, 98 L.Ed.2d 648 (1988); *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir.1986); *Ventura–Escamilla v. INS,* 647 F.2d 28, 30 (9th Cir.1981). The Fifth Circuit Court of Appeals, as well, has consistently maintained this general rule that decisions of United States consuls on visa matters are nonreviewable by the courts. *See, e.g., Perales v. Casillas,* 903 F.2d 1043, 1046 (5th Cir.1990); *Mulligan v. Schultz,* 848 F.2d 655, 657 (5th Cir.1988); *Centeno,* 817 F.2d at 1213; *Kummer v. Shultz,* 578 F.Supp. 341 (N.D.Tex.1984).[7]

The source of the consular nonreviewability doctrine is statutory. Although the INA

---

**6.** All determinations to deny visa applications are reviewed by a senior consular officer at the post concerned, who may concur in the initial determination, refer the matter for an advisory opinion, or assume responsibility for the case. 22 C.F.R. § 42.81(c). When, based on information provided by the applicant and otherwise available to the consular officer (including the advisory opinion, if any), the officer reaches a final determination that the application should be denied, the alien is informed of the decision and the legal grounds therefore. 22 C.F.R. § 42.81(b). Where appropriate, the applicant may return with additional evidence to seek to overcome the consular determination or may apply for a waiver of visa ineligibility, 22 C.F.R. §§ 42.81(b)(c) & (e). Plaintiff's complaint is silent regarding whether Sita and the children exhausted this administrative course, but most likely (in light of filing suit) they were unable to provide sufficient documentation to overcome

the consular officer's concerns regarding fraud and bigamy.

**7.** Plaintiff argues that judicial review of consular denial cases is reviewable, citing two cases: *Abourezk v. Reagan,* 785 F.2d 1043 (D.C.Cir. 1986), *aff'd by mem. by equally divided Court,* 484 U.S. 1, 108 S.Ct. 252, 98 L.Ed.2d 1 (1987) (per curiam); and *Kleindienst v. Mandel,* 408 U.S. 753, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972). However, *Abourezk* expressly states that though it permitted limited *agency* review, claims concerning decisions by *consular officers* are not reviewable. *Id.* at p. 1051 n. 6. While *Abourezk* may be somewhat muddied in this regard, a subsequent decision by the same court makes clear that it has long recognized that the courts are without authority to review the issuance of visas by consular officers. *See City of New York v. Baker,* 878 F.2d 507, 512 (D.C.Cir.1989). In any event, the Fifth Circuit Court of Appeals has

delegates general visa documentation responsibility to the State Department, it excludes from the Secretary of State the authority to grant or deny a visa, as follows:

> The Secretary of State shall be charged with the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to (1) the powers, duties, and functions of diplomatic and consular officers of the United States, *except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas....*

8 U.S.C. § 1104(a)(1) (emphasis added).

Although it is well settled that consular decisions denying visas to aliens are immune from judicial review, Plaintiff attempts to circumvent this established principle of law by relying on numerous statutes. However, the courts have also rejected jurisdictional claims on each of the statutes cited by Plaintiff. *See, e.g., Perales,* 903 F.2d at 1047–48 (jurisdiction is not provided by the Administrative Procedure Act); *Kummer,* 578 F.Supp. at 341 (visa decisions are not within the reach of the federal question and mandamus statutes). Furthermore, exercising jurisdiction over this case based on any of these statutes would violate the well established principle of nonreviewability of a consul's decision to grant or deny a visa, and the court declines to do so.

■ Plaintiff, without citing any authority, also attempts to distinguish the present matter from established case law by seeking to carve out an exception which permits judicial review of immigration visas rather than non-immigration visas. However, the court finds no support in law for Plaintiff's argument. First, the statute itself provides no such distinguishing language. *See* 8 U.S.C. §§ 1104(a) & 1201(g). Also, case law makes no such distinction. *See Mulligan,* 848 F.2d at 655; *Kummer,* 578 F.Supp. at 341.

■ Plaintiff also seeks to distinguish the denial of Sita's visa from the children's visas. Plaintiff argues that even if Sita is precluded from obtaining a visa based on the alleged fraud in the marriage, nothing precludes Vinod's four children from obtaining visas. However, as previously discussed, challenges to consular decisions are not reviewable by the courts. In any event, here Defendants have presented a facially bona fide reason for the denial, the consular officer's belief that Plaintiff fraudulently obtained his citizenship. *See Centeno,* 817 F.2d at 1213. Without Plaintiff legitimately obtaining his citizenship, his children certainly have no basis for immigrating.[8] Further, it is established that the court will not intervene even where the consular judgment rests on erroneous information. *See, e.g., Burrafato v. United States Dep't of State,* 523 F.2d 554, 555 n. 2 (2d Cir.1975), *cert. denied,* 424 U.S. 910, 96 S.Ct. 1105, 47 L.Ed.2d 313 (1976).

Because the court finds nothing distinguishing about the facts of this case, it concludes that judicial review of the Consular Officer's denial is impermissible based on the doctrine of nonreviewability. In short the court lacks subject matter jurisdiction to review the Consular Officer's determination.

## B. *Bivens* Claim

Plaintiff also vaguely alleges a *"Bivens* claim." Under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and its progeny, an individual may recover damages against a federal government official for violating a constitutional right.

### 1. *Official Capacity*

■ Although Plaintiff does not specify against which Defendant(s) he is asserting his *Bivens* claim, it is well settled a plaintiff

---

consistently maintained that consular officer's decisions are nonreviewable by the courts. Also, *Kleindienst* too addresses an agency decision, refusing to compel government action, and is not relevant for a consular officer's decision.

**8.** Plaintiff attempts to cloud this issue by challenging the government to investigate whether he

properly obtained his LPR status, and then to revoke his citizenship if appropriate. However, whether the INS determines to investigate alleged fraud in obtaining LPR status (and ultimately citizenship) is a separate and distinct issue from whether the consul has cause to deny a visa.

may not properly maintain a *Bivens* claim against a party in his official capacity. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1294 n. 12 (5th Cir.), *cert. denied*, 513 U.S. 926, 115 S.Ct. 312, 130 L.Ed.2d 275 (1994). Accordingly, this court **RECOMMENDS** that the *Bivens* claim against any Defendant in his official capacity, if any, be dismissed.

### 2. *Individual Capacity*

■ Although, as Defendants discuss in their motion and reply, Plaintiff has not yet affected service of process on any individual consular officer, the court will address the *Bivens* claim against the Consular Officer in his individual capacity in the interest of completeness and justice.

It appears to the court that Plaintiff is asserting a violation of procedural due process under the Fifth Amendment.[9, 10]. By asserting this claim Plaintiff once again attempts to sidestep the established principle of law that consular decisions denying visas to aliens are immune from judicial review. *See Perales*, 903 F.2d at 1046; *Mulligan*, 848 F.2d at 657; *Centeno*, 817 F.2d at 1213; *Kummer*, 578 F.Supp. at 341. To permit Plaintiff to assert a *Bivens* claim under the facts of this case would permit every disallowed visa applicant to file a lawsuit, and the court declines to do so.

■ In any event, assuming *arguendo* a *Bivens* action was appropriate here, Plaintiff is unable to establish a Constitutional violation to support his claim. For the guarantees of procedural due process to apply, it must first be shown that a deprivation of a significant life, liberty, or property interest

has occurred. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Here the facts arguably raise only one of these interests, a property interest.

Property interests are not created by the Constitution. *Board of Regents v. Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Rather, they are created and their dimensions are defined by existing rules or understandings which stem from an independent source, such as state law. *Id.* For a person to have a property interest, he "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.*

Here Plaintiff is unable to establish a legitimate, constitutionally protected claim of entitlement to a visa for his family members. Plaintiff, without citing any authority, instead relies on his unilateral expectation that the consular officer would grant the visas. However, a right to apply for a visa, does not ensure that one will be issued. Having concluded that Plaintiff had no property interest in obtaining a visa, no due process protection is implicated.

Further, Plaintiff is seeking equitable relief, rather than damages. Accordingly, it is not clear whether he has raised a *Bivens* claim at all. *See Bivens*, 403 U.S. at 388, 91 S.Ct. at 1999.

■ Finally, most of Vinod's allegations are barred by the statute of limitations because the Consular Officer did not initiate most of the alleged actions after April 19, 1994, two years prior to filing suit. *See Burrell v. Newsome*, 883 F.2d 416, 418 (5th

---

**9.** The due process clause of the Fifth Amendment pertains to the federal government, and the Fourteenth Amendment clause protects persons from state actions. However, the court employs the same analysis under the Fifth and Fourteenth Amendments. *See Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

**10.** The Fifth Amendment provides in pertinent part:

No person shall be ... deprived of life, liberty, or property, without due process of law.

*Id.* There are two aspects to due process, procedural and substantive. Procedural due process

guarantees that parties whose rights are to be effected may be heard, *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); and substantive due process protects a person's property from unfair governmental taking, *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 198–99, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989). Here Plaintiff generally complains that he has not had an opportunity to fully rebut the bigamy allegation to any governmental official, which appears to raise a procedural due process argument.

Cir.1989) (an analogous civil rights claimant in Texas must file suit within two years after the alleged violation occurred); *Alford v. United States,* 693 F.2d 498 (5th Cir.1982) (per curiam) (a *Bivens* action is controlled by the applicable state statute of limitations). Other than alleging that the Consular Officer denied the visas on November 16, 1994, all remaining timely allegations focus on actions by agency officials.

For the foregoing reasons, the court **RECOMMENDS** that Plaintiff's *Bivens* claim be dismissed.

Having recommended dismissal of each of Plaintiff's claims under 12(b)(1) and 12(b)(6), the court need not address Defendants' alternative motion for summary judgment.

## IV. *Conclusion*

For the foregoing reasons, the court **RECOMMENDS** that Defendants' Motion to Dismiss or Alternative Motion for Summary Judgment (Docket Entry No. 8) be **GRANTED.** If the trial court adopts this Memorandum and Recommendation, no claims remain in this suit and final judgment may be entered.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have *ten (10) days* from receipt thereof to file written objections thereto pursuant to General Order 80–5. Failure to file written objections within this time period shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *See Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415 (5th Cir.1996) (en banc). The original of any written objection shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of such objections shall be mailed to opposing counsel and to the chambers of the undersigned, 515 Rusk Avenue, Suite 7019, Houston, Texas 77002.