[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 31, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12829
Non-Argument Calendar

_____

D. C. Docket No. 04-23026-CV-PCH

HERNANDO JOSE DE CASTRO POLO,

Plaintiff-Appellant,

versus

DEBORAH FAIRMAN,
Consul, U.S. Embassy, Bogota, Columbia,
RAYMOND MCGRATH,
General Consul, U.S. Embassy, Bogota, Columbia,
LORI GIL,
Vice Consul, U.S. Embassy, Bogota, Columbia,
JOSEPH RUNYON,
Vice Consul, U.S. Embassy, Bogota, Columbia,
LYNN LEWIS,
Vice Consul, U.S. Embassy, Bogota, Columbia,
WILLIAM B. WOOD,
U.S. Ambassador to Columbia,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(January 31, 2006)**

Before BLACK, BARKETT and WILSON, Circuit Judges.

PER CURIAM:

Hernando Jose De Castro Polo ("De Castro") appeals the district court's

dismissal for lack of subject-matter jurisdiction of his petition for a writ of

mandamus, filed pursuant to 28 U.S.C. § 1361, by which he seeks to compel

Deborah Fairman, Consul; Raymond McGrath, General Consul; Lori Gil, Vice

Consul; Joseph Runyon, Vice Consul; Lynn Lewis, Vice Consul; and William B.

Wood, Ambassador (collectively referred to as "Defendants"), all of the United

States Embassy in Bogota, Colombia, to process his wife's visa application and

issue her a visa. We affirm the decision of the district court.

In April of 2002, De Castro, who is apparently a naturalized citizen living in

Miami, Florida, filed an immigrant visa petition to have his wife, who lives in

Barranquilla, Colombia, classified as an immediate relative. The Immigration and

Naturalization Service ("INS") approved De Castro's petition in August of 2002.

De Castro's wife then applied, through him, for an immigrant visa, at the United

2

States Embassy in Bogota, Colombia. Approximately two months later, a consular officer notified De Castro's wife in writing that her application was rejected pursuant to Immigration and Nationality Act ("INA") § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C). Under that provision, an alien who a consular officer (or the Attorney General) "knows or has reason to believe . . . is or has been an illicit trafficker in any controlled substance or in any listed chemical . . . or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(C). Claiming that there was no evidence for the decision, and that his wife was not involved in drug trafficking, De Castro filed the mandamus petition at issue. He contends that his rights under 8 U.S.C. §§ 1154(a) and 1255(a) have been violated and seeks an order compelling the processing and issuance of an immigrant visa for his wife.

The district court dismissed De Castro's petition based on the doctrine of consular nonreviewability, rejecting his claim that review was available under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq. De Castro contends that this decision constituted legal error. According to De Castro, his mandamus petition alleges a constitutional violation of his due process rights (and a violation of his rights under the INA) that renders the doctrine of consular nonreviewability

inapplicable.  De Castro further argues that jurisdiction exists because he is merely seeking to ensure that consular officials process his wife's visa application in a lawful and proper manner, not that they exercise their discretion to reach a particular result.

"Whether a district court has subject-matter jurisdiction over an action is a question of law that we review *de novo*."  *Kent v. Secretary of Labor*, 148 F.3d 1264, 1265 (11th Cir. 1998) (per curiam).  "The doctrine [of consular nonreviewability] holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999).  Although our research discloses no published opinion in which we have directly addressed this doctrine, it has been recognized in binding precedent and applied by numerous sister circuits.  *See, e.g.*, *Te Kuei Liu v. Immigration and Naturalization Serv.*, 645 F.2d 279, 285 (5th Cir. Unit A May 1981) (explaining that actions of American consul in Winnipeg, Canada, where alien's relative visa petition had been forwarded, were not "within the ambit of our review")[1]; *Centeno v. Shultz*, 817 F.2d 1212, 1214 (5th Cir. 1987) (per curiam) (citing *Te Kuei Liu* for proposition

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4

that "decisions of United States consuls on visa matters are nonreviewable by the courts"); *Saavedra*, 197 F.3d at 1159 (defining doctrine of consular nonreviewability); *Doan v. Immigration and Naturalization Serv.*, 160 F.3d 508, 509 (8th Cir. 1998) (holding that decision of INS district director, who was functional equivalent of a consular official, in denying visa-related waiver was not subject to judicial review because there was no clear statutory grant of authority); *Li Hing of Hong Kong, Inc. v. Levin*, 800 F.2d 970, 971 (9th Cir. 1986) ("[I]t has been consistently held that the consular official's decision to issue or withhold a visa is not subject either to administrative or judicial review."); *Burrafato v. United States Dep't of State*, 523 F.2d 554, 556 n.2 (2d Cir. 1975) (recognizing that court would lack jurisdiction to review denial of visa application by consul in Palermo, Italy).

De Castro does not deny the viability of the consular nonreviewability doctrine, but contends that it does not apply to his mandamus petition because he alleges a constitutional due process violation. He notes that the *Saavedra* court acknowledged that jurisdiction would exist where "United States sponsors of a foreign individual claim that the State Department's denial of a visa to an alien violated their constitutional rights." *Saavedra*, 197 F.3d at 1163 (citing *Abourezk v. Reagan*, 785 F.2d 1043, 1050 (D.C. Cir. 1986), *aff'd by an equally divided*

5

*court*, 484 U.S. 1, 108 S. Ct. 252, 98 L. Ed. 2d 1 (1987)). We find this argument unpersuasive for several reasons. First of all, De Castro's claimed due process violation appears in his initial brief on appeal, not his mandamus petition. The petition appears to allege no more than a violation of De Castro's "rights" under §§ 1154(a) and 1255(a). "With respect to purely statutory claims, courts have made no distinctions between aliens seeking review of adverse consular decisions and the United States citizens sponsoring their admission; neither is entitled to judicial review." *Saavedra*, 197 F.3d at 1164. Second, the citizen-plaintiffs in *Abourezk* alleged that their First Amendment rights were violated by the denial of visas to foreigners whom they had invited to speak at various gatherings in the United States. *See Abourezk*, 785 F.2d at 1048-50. De Castro, by contrast, does not explain the nature of the due process right of which he was allegedly deprived by the denial of his wife's visa application.[2] He does not claim that consular officials failed to follow any particular statutory or regulatory provision governing the issuance or denial of visas. Moreover, the *Burrafato* court indicated that generalized due process claims like De Castro's would likely fall within the scope of the consular nonreviewability doctrine. *See* 523 F.2d at 556 n.2.

---

[2] We note that De Castro's wife, as an unadmitted and nonresident alien, "had no constitutional right of entry to this country as a nonimmigrant or otherwise." *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S. Ct. 2576, 2581, 33 L. Ed. 2d 863 (1972).

De Castro also argues that the doctrine of consular nonreviewability is inapplicable because he is simply challenging the handling of his wife's visa application, and not seeking to force a consular official to make a particular decision. The language of De Castro's mandamus petition, which clearly seeks a judgment ordering Defendants to process and *issue* an immigrant visa to his wife, belies this argument. Furthermore, notwithstanding De Castro's claim that Defendants' decision (in denying the visa) was not based on any evidence, he offers no explanation as to how Defendants failed to comply with any applicable statutory or regulatory provisions. Indeed, it is uncontroverted that De Castro's wife received a written statement of the reason for the rejection of her visa application, even though it appears that Defendants were not statutorily obligated to issue one. *See* 8 U.S.C. § 1182(b); 22 C.F.R. § 41.121.[3]

Finally, we reject De Castro's argument that the APA, in conjunction with 28 U.S.C. § 1331, provides for review of his claims. We have previously noted "Congress's intent to preclude judicial review of administrative determinations concerning aliens who have never presented themselves at the borders of the country," and concluded that "[r]eview under the APA would be inconsistent with

---

[3] De Castro also claims that if evidence existed supporting Defendants' belief that his wife fell within the scope of § 1182(a)(2)(C), it should have been disclosed. However, the State Department's records pertaining to the issuance or refusal of visas or permits to enter the United States are confidential. *See* 8 U.S.C. § 1202(f).

7

that intent." *Haitian Refugee Center, Inc. v. Baker*, 953 F.2d 1498, 1507 (11th Cir. 1992) (per curiam); *cf. Saavedra*, 197 F.3d at 1162 ("To put the matter in terms of APA § 701(a)(1), we may infer that the immigration laws preclude judicial review of consular visa decisions.").

Having considered the doctrine of consular nonreviewability and found De Castro's arguments against its application unavailing, we agree that the district court properly dismissed his mandamus petition for lack of subject matter jurisdiction. Accordingly, we affirm the district court's decision.

**AFFIRMED.**