**Jennifer PEDROZO and Coane & Associates, Plaintiffs,**

**v.**

**Hillary CLINTON, Janet Napolitano, et al., Respondents.**

**Civil Action No. H–08–3450.**

United States District Court, S.D. Texas, Houston Division.

April 23, 2009.

Bruce A. Coane, Ajay Choudhary, Coane & Associates, Houston, TX, for Plaintiffs.

Geoffrey Forney, U.S. Department of Justice, Washington, DC, for Respondents.

## ORDER

DAVID HITTNER, District Judge.

Pending before the Court is Defendants' Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction (Document No. 7). Having considered the motion, submissions, and applicable law, the Court determines the motion should be granted in part and denied in part.

## BACKGROUND

Plaintiffs Jennifer Pedrozo ("Pedrozo") and Coane and Associates ("Coane") (collectively "Plaintiffs") filed this lawsuit against Defendants United States Department of State through its Secretary of State, Hillary Clinton; Janet Napolitano, Secretary, United States Department of Homeland Security; Michael Aytes, Acting Director, United States Citizenship and Immigration Services ("USCIS"); and Richard Dale Haynes, Consul General, Embassy of the United States in Manila, Philippines (collectively "Defendants"). Plaintiffs seek to compel action on a previously filed H–1B Petition for non-immigrant, Alien Worker status.

Pedrozo is an alien national currently residing in Manila, Philippines. Coane is a law firm with offices in Texas and Florida. Prior to October 2007, Coane, as petitioner, and Pedrozo as beneficiary, filed a Form I–129 petition with USCIS seeking to qualify Pedrozo as an H–1B non-immigrant temporary worker pursuant to the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1101 *et. seq.* (2006).[1] As stated in its H–1B petition, Coane intended to hire Pedrozo as a "Human Resources Advisor."

On October 17, 2007, USCIS approved Coane's H–1B petition and on January 3, 2008, Pedrozo filed a visa application with

---

**1.** A Form I–129 is used by prospective employers to petition USCIS on behalf of an alien to come to the United States on a temporary basis to perform services as an H–1B nonimmigrant worker. 8 C.F.R. § 299.1 (2008) (prescribed forms); *see also* 8 C.F.R. § 214.1 (requirements for admission, extension, and maintenance of status). H–1B Visas are issued to non-immigrant aliens permitting them to enter the United States on a temporary basis to perform services in a "specialty occupation." *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b) (Supp.2008) (providing non-immigrant status to aliens "coming temporarily to the United States to perform ser-

vices ... in a specialty occupation described in section 1184(i)(1) of this title ... and with respect to whom the Secretary of Labor determines and certifies to the Attorney General that the intending employer has filed with the Secretary an application under section 1182(n)(1) of this title."); *see also* 8 U.S.C. § 1184(i)(1) (2005) (defining specialty occupations as "(A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States.").

the United States Embassy in Manila ("U.S. Embassy") seeking an H–1B Visa.[2] That same day, Pedrozo appeared at the U.S. Embassy for an interview before an Embassy Consular Officer. Based on the interview, the Consular Officer denied Pedrozo's visa application pursuant to INA § 221(g), indicating that: (1) the position of "Human Resources Advisor" did not qualify as a specialty occupation as defined by 8 U.S.C. § 1184(i)(1); and (2) Pedrozo's credentials did not meet the specifications for the "Human Resources Advisor" posi-

tion stated in Coane's petition.[3] As a result of the factual discrepancies in Pedrozo's interview statements as compared to Coane's H–1B petition filed with USCIS, the Consular Officer returned the petition to USCIS for reconsideration.[4]

On November 20, 2008, after eleven months of attempting to contact the U.S. Embassy and USCIS regarding the status of the previously approved H–1B petition, Plaintiffs filed the pending lawsuit seeking to compel the U.S. Embassy to complete the processing of Pedrozo's visa applica-

---

**2.** "The approval of a petition by the Department of Homeland Security or by the Department of Labor does not establish that the alien is eligible to receive a nonimmigrant visa." 22 C.F.R. § 41.53(b).

**3.** Section 221(g) of the INA is codified at 8 U.S.C. § 1201(g) (nonissuance of visas or other documents) and states in relevant part:

> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa ... or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa ....

**4.** The regulations governing adjudication of H–1B petitions are complex. It is helpful to refer to the Foreign Affairs Manual, which is used by USCIS and Consular Officers alike in processing petitions and visa applications. *See* 9 FOREIGN AFFAIRS MANUAL § 41 (2008) (non-immigrant visas). Note 2.2 to section 41.53 provides:

> a. An approved Form I–129, Petition for a Non-immigrant Worker, or evidence that the H petition has been approved ... or telegraphic e-mail, or telephonic notification from Department of Homeland Security (DHS) or the Department is, in itself, to be considered by consular officers as prima facie evidence that the requirements for H classification which are examined in the petition process have been met. Consular officers do not have the authority to question the approval of H petitions without specific evidence, unavailable to DHS at the

> time of petition approval, that the beneficiary may not be entitled to status.
> b. On the other hand, the approval of a petition by DHS does not relieve the alien of the burden of establishing visa eligibility in the course of which questions may arise as to his or her eligibility to H classification. If information developed during the visa interview (e.g., evidence which was not available to DHS) gives the consular officer reason to believe that the beneficiary may not be entitled to status, the consular officer may request any additional evidence which bears a reasonable relationship to this issue. Disagreement with DHS interpretation of the law or the facts, however, is not sufficient reason to ask DHS to reconsider its approval of the petition.

9 FOREIGN AFFAIRS MANUAL § 41.53 n. 2.2. Moreover, note 2.3 to section 41.53 provides:

> You shall consider all approved H petitions in light of these Notes, process with dispatch those cases which appear legitimate, and identify those which require local investigation or referral to the approving U.S. Citizenship and Immigration Services (USCIS) office for reconsideration. Refer cases to USCIS for reconsideration sparingly, to avoid inconveniencing bona fide petitioners and beneficiaries and causing duplication of effort by USCIS. You must have specific evidence of a requirement for automatic revocation, misrepresentation in the petition process, lack of qualification on the part of the beneficiary, or of previously unknown facts, which might alter USCIS's finding before requesting review of a Form I–129, Petition for a Non-immigrant Worker, approval.

9 FOREIGN AFFAIRS MANUAL § 41.53 n. 2.3.

tion and also to compel USCIS to complete the processing of Coane's H–1B petition.

On January 26, 2009, USCIS issued a notice of intent to revoke Coane's previously approved H–1B petition, citing the factual discrepancies uncovered by the Consular Officer.[5] The notice of intent to revoke provided Coane with instructions on how to cure the discrepancies and requested additional documentation supporting the statements contained in the original H–1B petition. Additionally, the letter of intent to revoke gave Coane until February 28, 2009 to comply with the request.

On February 2, 2009, shortly after US-CIS issued the notice of intent to revoke, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants assert that Plaintiffs' complaint is now moot and that the Court lacks subject matter jurisdiction to review the Consular Officer's decision to deny Pedrozo's visa application. On March 20, 2009, Plaintiffs filed a response to Defendants' motion to dismiss, arguing that the agency has unreasonably delayed in rendering a final decision on the H–1B petition and that the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 555(b), 706 (2006), provides the Court authority to compel action where an agency has caused unreasonable delay.

On March 25, 2009, Defendants replied, arguing that Plaintiffs are the sole cause of any delay because they have failed to respond to the USCIS's notice of intent to revoke requesting additional documentation to support the H–1B petition. There-

fore, the Court must determine whether: (1) Plaintiffs' claims are now moot; (2) the Court has subject matter jurisdiction under the APA; and (3) if the Court has subject matter jurisdiction, whether US-CIS has caused any unreasonable delay.

### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a party may challenge the subject matter jurisdiction of the district court to hear a case. *See* FED. R. CIV. P. 12(b)(1). In ruling on a motion to dismiss for lack of subject matter jurisdiction, courts may evaluate: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the courts resolution of disputed facts. *See Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001) (citing *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir. 1996)). A court must accept all factual allegations in the plaintiff's complaint as true. *Id.*

The burden of establishing subject matter jurisdiction in federal court is on the party seeking to invoke it. *Hartford Ins. Group v. Lou–Con Inc.,* 293 F.3d 908, 910 (5th Cir.2002). Accordingly, Plaintiffs must prove that jurisdiction does in fact exist. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.1980).

### LAW AND ANALYSIS

Plaintiffs claim that: (1) the Consular Officer's decision to deny Pedrozo's visa

---

**5.** The acting USCIS director "may revoke a petition at any time." 8 C.F.R. § 214.2(h)(11)(i)(B). If the director finds "[t]he statement of facts contained in the petition or on the application for a temporary labor certification was not true and correct, inaccurate, fraudulent, or misrepresented a material fact[,]" the director shall issue a notice of intent to revoke the petition. 8 C.F.R. § 214.2(h)(11)(iii)(A)(2). "The notice of in-

tent to revoke shall contain a detailed statement of the grounds for the revocation and the time period allowed for the petitioner's rebuttal. The petitioner may submit evidence in rebuttal within 30 days of the notice. The director shall consider all relevant evidence presented in deciding whether to revoke the petition in whole or in part." 8 C.F.R. § 214.2(h)(11)(iii)(B).

application at the time of her interview was arbitrary and capricious; (2) the U.S. Embassy has not yet returned the approved H–1B petition to USCIS for further processing; and (3) USCIS has unreasonably delayed in rendering a final decision on the status of Coane's H–1B petition filed on Pedrozo's behalf. Plaintiffs ask the Court to: (1) compel the U.S. Embassy to complete the processing of Pedrozo's visa application according to the previously approved H–1B petition; and (2) compel USCIS to complete the processing of Coane's H–1B petition. Plaintiffs assert they are entitled to such relief pursuant to the Mandamus Act, 28 U.S.C. § 1361 (2006), Declaratory Judgment Act, 28 U.S.C. § 2201 (2006), and the APA.

On the other hand, Defendants argue the Court lacks subject matter jurisdiction and that, nevertheless, Plaintiffs' claims are now moot. In particular, Defendants argue that the U.S. Embassy already has returned the previously approved H–1B petition to USCIS with the recommendation to reconsider the petition's status. Additionally, Defendants argue that the U.S. Embassy already has denied Pedrozo's visa application and, thus, there is nothing left to decide. Moreover, Defendants argue the Court lacks subject matter jurisdiction to review a Consular Officer's decision and to compel USCIS action on matters that are within USCIS's discretion. The parties' arguments present a variety of questions, which the Court will address in turn.

*A. Whether the Plaintiffs' Claims are Moot*

■ According to Plaintiffs, after the Consular Officer denied Padrozo's visa application, the Officer was required to return the H–1B petition to USCIS for reconsideration. *See* 9 FOREIGN AFFAIRS

MANUAL § 41.53 n. 2.3. At the time they filed their suit, Plaintiffs claimed eleven months had passed and the U.S. Embassy had not yet returned the approved H–1B petition to USCIS. However, Defendants have attached the USCIS's notice of intent to revoke as an exhibit to their motion to dismiss. The notice indicates that USCIS has been apprised of new facts that indicate inaccuracies in the H–1B petition, which apparently were brought to USCIS's attention following the Consular Officer's interview. The purpose of returning the H–1B petition is to notify the approving USCIS office that there may not be a bona fide request for non-immigrant status. *See* 8 U.S.C. § 1201(g); 9 FOREIGN AFFAIRS MANUAL § 41.53 n. 2.3. Because USCIS has been apprised of the Consular Officer's findings, as evidenced in USCIS's notice of intent to revoke, it is clear that the purpose of returning the petition has been met.[6] Thus, to the extent Plaintiffs seek to compel the U.S. Embassy to return the petition to USCIS for reconsideration, that issue is now moot. *See S. Plains Switching Ltd. v. Surface Transp. Bd.*, 271 Fed.Appx. 465, 466 (5th Cir.2008) (observing that a request for mandamus relief is moot when the event sought to be compelled has occurred); *see also Bayou Liberty Ass'n, Inc. v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir.2000) (citing *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir.1998)) ("[T]o qualify as a case for federal court adjudication, a case or controversy must exist at all stages of the litigation, not just at the time the suit was filed.").

Additionally, Plaintiffs seek to compel the U.S. Embassy to complete the processing of Pedrozo's visa application. However, the Consular Officer already has denied the application. Thus, to the extent that

---

**6.** USCIS's notice of intent to revoke was issued on January 26, 2009, approximately two months after Plaintiffs filed their complaint with the Court.

Plaintiffs seek to compel the U.S. Embassy to complete the processing of Pedrozo's visa application, that issue also is now moot. *Id.* On the other hand, Plaintiffs claim that the Consular Officer's denial was arbitrary and capricious and that the Court should compel the U.S. Embassy to render a decision other than a denial. Such an argument raises the question of whether the Court has subject matter jurisdiction to entertain such a claim, to which the Court now turns.

*B. Whether the Court Maintains Subject Matter Jurisdiction as to the Consular Officer's Denial of Pedrozo's Visa Application*

The United States Court of Appeals for the Fifth Circuit has stated that "the denial of visas to aliens is not subject to review by the federal courts." *Centeno v. Shultz,* 817 F.2d 1212, 1213 (5th Cir. 1987) (per curiam) (citing *Kleindienst v. Mandel,* 408 U.S. 753, 766, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972)). This principle is firmly rooted in American jurisprudence and has become known as the "doctrine of consular nonreviewability." *Am. Acad. of Religion v. Chertoff,* No. 06 CV 588(PAC), 2007 WL 4527504, at *5 (S.D.N.Y. Dec. 20, 2007). The doctrine was developed by courts in recognition of Congressional authority providing consular officers the power to grant or deny alien visas.[7] *Aggarwal v. Sec. of State,* 951 F.Supp. 642, 647–48 (S.D.Tex.1996), *aff'd, Aggarwal v. Albright,* 124 F.3d 193 (5th Cir.1997). Courts consistently follow this general rule. *See, e.g., De Castro v. Fairman,* 164 Fed.Appx. 930, 932 (11th Cir.2006); *Doan*

*v. Immigration & Naturalization Serv.,* 160 F.3d 508, 509 (8th Cir.1999); *Li Hing of Hong Kong, Inc. v. Levin,* 800 F.2d 970, 971 (9th Cir.1986); *Hsieh v. Kiley,* 569 F.2d 1179, 1181 (2d Cir.), *cert. denied, Hsieh v. Immigration & Naturalization Serv.,* 439 U.S. 828, 99 S.Ct. 102, 58 L.Ed.2d 121 (1978).

Here, Plaintiffs argue that despite the consular non-reviewability doctrine, the Court maintains subject matter jurisdiction pursuant to the APA and the Mandamus Act. *See Aggarwal,* 951 F.Supp. at 648. However, the Fifth Circuit has rejected such jurisdictional claims. *See, e.g., Perales v. Casillas,* 903 F.2d 1043, 1047 (5th Cir.1990) ("[The APA is] inapplicable to agency action if the action is 'committed to agency discretion by law.'"); *Kummer v. Shultz,* 578 F.Supp. 341, 341–42 (N.D.Tex.1984) (observing that the provisions of the APA and the Mandamus Act do not provide a sufficient basis for federal subject-matter jurisdiction in dealing with matters of the visa issuing process). The authority to issue visas "has long been an area of legislative discretion in which courts have determined they do not have the authority to intervene." *Kummer,* 578 F.Supp. at 341–42. Exercising jurisdiction over such decisions would violate the well-established doctrine of consular non-reviewability. *Id.; Aggarwal,* 951 F.Supp. at 648. Therefore, application of consular non-reviewability prevents the Court's exercise of jurisdiction to compel the U.S. Embassy to complete processing Pedrozo's visa application.

---

**7.** Congress has provided certain powers and duties to the Secretary of State:

The Secretary of State shall be charged with the administration and the enforcement of the provisions of this chapter and all other immigration and nationality laws relating to (1) the powers, duties, and functions of diplomatic and consular officers of the United States, *except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas.*

INA § 104(a) (codified at 8 U.S.C. § 1104(a)) (emphasis added).

*C. Whether the Court Maintains Subject Matter Jurisdiction to Compel USCIS to Render a Decision on Coane's H– 1B Petition.*

■ Additionally, Plaintiffs seek to compel USCIS to render a decision on the status of Coane's previously approved H–1B petition. Plaintiffs claim USCIS has a duty to act and that it has unreasonably delayed in doing so. Defendants, however, claim the Court lacks subject matter jurisdiction to compel USCIS to act pursuant to the jurisdictional stripping statute provided in 8 U.S.C. § 1252(a)(2)(B)(ii) (judicial review of orders of removal).[8]

In *Zhao v. Gonzales,* the Fifth Circuit provided a clear roadmap for interpreting § 1252(a)(2)(B)(ii). *See Zhao v. Gonzales,* 404 F.3d 295, 302–04 (5th Cir.2005). There, the court interpreted the statute's language to mean that courts are precluded from reviewing only those decisions "specified in the statute" as discretionary. *See id.* at 303 ("One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision. That reading, however, is incorrect, because § 1252(a)(2)(B)(ii) strips courts only of jurisdiction to review discretionary authority that is *specified in*

the *statute.*"). The court further noted that "[t]he statutory language is uncharacteristically pellucid on this score; it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised *under this statute,*' but specifically to 'authority of which is *specified under this subchapter* to be in the discretion of the Attorney General.'" *Id.* Moreover, other courts have interpreted § 1252 as covering 8 U.S.C. §§ 1151–1378. *See Yerkovich v. Ashcroft,* 381 F.3d 990, 992 (10th Cir.2004); *Onyinkwa v. Ashcroft,* 376 F.3d 797, 799 (8th Cir.2004); *Zheng v. Pogash,* 416 F.Supp.2d 550, 556 (S.D.Tex.2006). Thus, the jurisdiction stripping statute instructs courts to look at the statutory text and determine whether it grants the Attorney General discretion—if it does, then the case must be dismissed for lack of subject matter jurisdiction. *See E. Carpet House, Inc. v. Dep't of Homeland Sec.,* 430 F.Supp.2d 672, 675 (S.D.Tex.2006).

USCIS is statutorily authorized to regulate non-immigrant admission. 8 U.S.C. § 1184; *See E. Carpet House,* 430 F.Supp.2d at 675; *Morris v. Gonzales,* Civ. Act. No. 06–4383, 2007 WL 2740438, at *3 (E.D.Pa. Sept. 19, 2007). Section 1184 contains multiple subsections, each regulating various forms of non-immigrant statuses. *See, e.g.,* 8 U.S.C. § 1184(a)—(i).[9]

8. The jurisdictional stripping statute provides:

(a) Applicable provisions

. . . .

(2) Matters not subject to judicial review

. . . .

(B) Denials of discretionary relief

. . . .

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

. . . .

(ii) any other decision or action of the Attorney General or the Secretary of Home-

land Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (2006).

9. There is disagreement between federal courts as to whether § 1252(a)(2)(B)(ii) bars judicial review of decisions made pursuant to § 1184. *Compare M.D. Mgmt. Co. v. U.S. Dep't of Homeland Sec.,* No. Civ. A. 04–10499–RWZ, 2005 WL 91307, at *2 (D.Mass. Jan. 18, 2005) (stating § 1252(a)(2)(B)(ii) does not strip courts of jurisdiction to review decision under § 1184), *with Mahaveer, Inc. v. Bushey,* No.Civ. A. 04–1275(GK), 2006 WL 1716723, at *3–4 (D.D.C. June 19, 2006) (stating § 1252(a)(2)(B)(ii) strips courts of juris-

Section 1184(c)(1) provides for employers petitioning for non-immigrant status pursuant to § 1101(a)(15)(H). *See* 8 U.S.C. § 1184(c)(1). That section provides: "The question of importing any alien as a non-immigrant under section subparagraph (H) ... of section 1101(a)(15) of this title ... in any specific case or specific cases *shall* be determined by the Attorney General, after consultation with appropriate agencies of the Government, upon petition of the importing employer." 8 U.S.C. § 1184(c) (emphasis added). The term "shall" is an auxiliary verb that modifies "determine," thereby conveying Congress's intent to mandate USCIS to make a determination on the petition after consulting other appropriate agencies. *See Alsharqawi v. Gonzales,* Civ. Act. No. 3:06–CV–1165–N, 2007 WL 1346667, at *3 (N.D.Tex. Mar. 14, 2007); *Ayanbadejo v. Chertoff,* 517 F.3d 273, 278 n. 14 (5th Cir. 2008) ("The use of the word "shall" indicates that the approval or disapproval of the petition may not be discretionary."). Moreover, because of the jurisdiction stripping statute's pellucid phrasing, it is clear the language of other federal regulations further defining the petition process have no bearing in determining whether USCIS's duty to act is discretionary or non-discretionary. *See Ayanbadejo,* 517 F.3d at 277. Thus, the Court determines that USCIS has a non-discretionary duty to process non-immigrant status petitions pursuant to § 1184(c) and that the Court's jurisdiction is not stripped by § 1252(a)(2)(B)(ii) (jurisdiction stripping

statute). As a result of the Court's determination, the Court will address Plaintiffs' claim and determine whether USCIS has unreasonably delayed in rendering a final decision on Coane's non-immigrant petition filed on Pedrozo's behalf.

Some time prior to October 2007, Coane filed an I–129 petition with USCIS seeking non-immigrant status on Pedrozo's behalf. On October 17, 2007, USCIS approved the petition thereby granting Pedrozo the non-immigrant status needed to apply for an H–1B visa. However, on January 3, 2008, the U.S. Embassy denied Pedrozo's visa application and returned the non-immigrant petition to USCIS for reconsideration. Plaintiffs claim that over the next eleven months they were unable to obtain a final decision on the status of the non-immigrant petition. Accordingly, on November 28, 2008, Plaintiffs filed this lawsuit, claiming USCIS created an unreasonable delay in violation of the APA.

■ The APA authorizes suit by "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" is defined to include the "failure to act." 5 U.S.C. § 551(13). Moreover, under the APA, the Court has the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also Sawan v. Chertoff,* 589 F.Supp.2d 817, 829 (S.D.Tex. 2008). Thus, USCIS is required to pro-

diction to review decisions under § 1184(a), (c)), *and E. Carpet House,* 430 F.Supp.2d at 675 (finding § 1184(a) to be discretionary and therefore not reviewable by federal courts). In *Eastern Carpet House,* the court determined it had no jurisdiction to review a USCIS decision denying an extension of an L–1A visa based on the court's reading of § 1184(a). *E. Carpet House,* 430 F.Supp.2d at 675. However, the *Eastern Carpet House* court's decision has been criticized as being

"overly broad because the specific authority to grant admissions of a non-immigrant is expressly set forth in [§ 1184(c)(1) ]." *Shah v. Chertoff,* Civ. Act. No. 3:05–CV–1608–BH (K) ECF, 2006 WL 2859375, at *7 (N.D.Tex. Oct. 5, 2006) ("As a fundamental rule of statutory interpretation, specific provisions trump general provisions.") (quoting *Navarro–Miranda v. Ashcroft,* 330 F.3d 672, 676 (5th Cir.2003)).

cess non-immigrant status petitions "within a reasonable time" and "with due regard for the convenience and necessity of the parties or their representatives." 5 U.S.C. § 555(b). Although there appears to be no statutory or regulatory deadlines by which an I–129 petition for non-immigrant status must be processed, at some point failure to take action runs afoul of the APA. *See Omoruyi v. Chertoff,* Civ. Act. No. H–08–0106, 2008 WL 1912887, at *3 (S.D.Tex. Apr. 28, 2008). However, "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Elmalky v. Upchurch,* Civ. Act. No. 3:06–CV–2359–B, 2007 WL 944330, at *6 (N.D.Tex. Mar. 28, 2007). Nevertheless, to determine whether an agency has failed to act within a reasonable time, courts will look to the source of the delay—"the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceedings." *Id.* (citing *Zheng v. Reno,* 166 F.Supp.2d 875, 880 (S.D.N.Y.2001)).

On January 26, 2009—two months after Plaintiffs filed this lawsuit—USCIS issued a notice of intent to revoke Pedrozo's non-immigrant status. In the notice of intent to revoke, USCIS articulated several reasons for contemplating revocation and requested further documentation from Plaintiffs as a way to cure the issues cited. The notice gave Plaintiffs until February 28, 2009 to comply with USCIS's request. Moreover, the Court notes that on February 25, 2009, Coane issued a letter to USCIS indicating Coane was unable to meet the February 28, 2009 deadline and requested more time to furnish the requested documentation.[10] Thus, to the extent Plaintiffs complain that the eleven months prior to USCIS issuing the notice of intent to revoke is an unreasonable delay, the Court is unpersuaded. *See, e.g.,*

*Ahmadi v. Chertoff,* 522 F.Supp.2d 816, 822 (N.D.Tex.2007) (indicating that a four-year delay may be unreasonable).

Moreover, the Court notes that because USCIS has acted now by issuing the notice of intent to revoke, and because Coane has requested a time extension, the Plaintiffs' claim is now moot. *See S. Plains Switching,* 271 Fed.Appx. at 466; *Bayou Liberty Ass'n,* 217 F.3d at 396.

### CONCLUSION

In sum, the Court determines that because the U.S. Embassy returned Pedrozo's petition to USCIS for reconsideration, Plaintiffs' claims seeking to compel the U.S. Embassy to return the petition is moot. Furthermore, the Court finds it lacks subject matter jurisdiction to compel the U.S. Embassy to render any other decision on Pedrozo's visa application. Moreover, the Court determines that it properly maintains subject matter jurisdiction to consider Plaintiffs' request to compel the USCIS to act in a timely manner. However, because the Court finds that USCIS has acted in a timely manner by notifying Plaintiffs of its intent to revoke Pedrozo's status, and because Plaintiffs failed to submit timely the supporting documents requested by USCIS, the Court determines that USCIS caused no unreasonable delay. Accordingly, the Court hereby

ORDERS that Defendants' Memorandum in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction (Document No. 7) is GRANTED IN PART and DENIED IN PART. The Court further

ORDERS that the Plaintiffs' claim seeking the Court to compel the U.S. Embassy to complete processing Pedrozo's visa application is DISMISSED for lack of sub-

---

**10.** Coane's letter to USCIS is attached as an    exhibit to Defendants' reply.

ject matter jurisdiction. The Court further

ORDERS that Plaintiffs' claim seeking the Court to compel the USCIS to render a decision on Coane's previously approved H–1B petition is DENIED AS MOOT. The Court further

ORDERS that all Plaintiffs' claims are hereby DISMISSED.