**Zulema De La Garza PERALES, et al.,**
**Plaintiffs–Appellees,**

v.

**Richard CASILLAS, et al.,**
**Defendants–Appellants.**

No. 89–5515.

United States Court of Appeals,
Fifth Circuit.

June 25, 1990.

Marshall Tamor Golding, Mark C. Walter, Dept. of Justice, Office of Immigration Litigation, Civ. Div., Washington, D.C., and Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for defendants-appellants.

Barbara Hines, Austin, Tex., and Lee J. Teran, San Antonio, Tex., for plaintiffs-appellees.

Before GOLDBERG, REAVLEY, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

The INS appeals from the district court's grant of an injunction specifying requirements for the adjudication of class members' requests for pre-hearing voluntary departure and employment authorization. Because the agency's decision to grant voluntary departure and work authorization has been committed to agency discretion by law, those parts of the injunction regulating what the INS may consider in making these decisions must be vacated.

I

The plaintiff sued on June 9, 1986, requesting declaratory, injunctive, and mandamus relief requiring the INS to change its method of considering petitions for voluntary departure and employment authorization for certain types of illegal aliens. The district court certified a class consisting of:

All immigrant visa applicants who reside within the San Antonio, Texas INS District and are immediate relatives of United States citizens or within sixty days of visa availability and who have applied or will apply for employment authorization and (1) whose applications for employment authorization have been or will be denied, or (2) whose applications for employment authorization have not been timely adjudicated.

After a two day trial in July 1988, the district court issued an injunction providing:

1. All requests for voluntary departure made by class members shall be adjudicated within 60 days, consistent with 8 C.F.R. 274(a).13(d). Applications for employment authorization shall be considered together with applications for voluntary departure, unless the applicant has separately applied for and received voluntary departure, and applicants who only request employment authorization will also be deemed to have requested voluntary departure status;

2. All denials of requests for voluntary departure shall be made in writing, consistent with 8 C.F.R. 274a.13(c). The issuance of an Order to Show Cause and the commencement of deportation proceedings will not satisfy the requirement of a written reason(s) for the denial of a request for voluntary departure;

3. Defendants shall be prohibited from denying requests for employment authorization and voluntary departure on the grounds that applicants have failed to demonstrate economic necessity or humanitarian factors. Failure to diligently pursue the visa shall not be a reason for denying voluntary departure if the applicant has delayed the visa interview because of his/her inability to gain employment authorization from the Service. The alien's manner of entry shall not be a reason for denying voluntary departure

or employment authorization, unless other adverse factors are present, and there are no factors which favor the applicant. In addition the Service may not consider the alien's willingness to wait for the visa interview abroad, economic need, diligent pursuit of the visa application by the alien's spouse, impact on the U.S. job market, or the filing of a frivolous request for political asylum, in making adjudications for employment authorization and voluntary departure.

4. The INS shall be prohibited from initiating deportation proceedings against class members in retaliation for their requests for relief. Unless INS reasonably believes that a class member is guilty of marriage fraud, has committed a serious criminal offense which would make him otherwise excludable from this country, or has a pattern of illegal entry violations, the Service may not initiate deportation proceedings against class members.

All of the class members entered the United States illegally, and thus are not eligible for adjustment of status within this country, 8 U.S.C. § 1255a(c) (1970 & Supp. 1987), and must travel to a United States consulate abroad to complete the immigration process. All class members have had initial immigration petitions (INS form I–130) filed on their behalf by their U.S. citizen spouses. After approval of their I–130 petitions it may take between three and six months for the U.S. consulates abroad to forward "Packet 3" application materials for plaintiffs' immigrant visas. There is no time limit set by statute or regulation for the completion of Packet 3 applications. Upon completion of the Packet 3 application, prospective immigrants will be scheduled for interviews at the consulates abroad, and at that time the consular official will determine whether they are legally admissible into the United States. The consular decision on the visa application is totally immune from review. *Li Hing of Hong Kong v. Levin*, 800 F.2d 970, 971 (9th Cir.1986); *Kummer v. Shultz*, 578 F.Supp. 341 (N.D.Tex.1984). One requirement for granting a visa is that class members prove that they are not, and will not

likely become, "public charges." 8 U.S.C. § 1182(a)(15). It can take anywhere from nine months to three years from approval of an I–130 to lawful permanent residence in the U.S.

During this interim application period plaintiffs have no legal status, and as illegal aliens they are subject to deportation by INS. Although the class members are subject to deportation, at times it has been the policy of the INS to allow those with approved I–130's to remain in the U.S. unlawfully through grants of voluntary departure, primarily for humanitarian reasons. The district court found that deporting these individuals would be "contrary to one of the central purposes of the immigration laws—family reunification."

The Immigration Reform and Control Act of 1986 (IRCA), 8 U.S.C. § 1324a, makes it unlawful for employers to hire undocumented workers. Thus, the alien class members find it difficult, if not impossible, to lawfully support their American citizen families until their visa applications are approved. In addition, they face possible exclusion from this country if they are unable to prove at the consular interview that they have the economic means to avoid public charge classification.

Before 1984 requests for voluntary departure and employment authorization were routinely granted by the San Antonio District Office of the INS. At one time aliens with approved visa petitions were automatically granted voluntary departure and employment authorization even if they did not request it.

The INS concedes that the San Antonio district failed to adjudicate requests for voluntary departure between August 1984 and May 1987. The legal effect was also to deny all requests for employment authorization. Since that time, requests for voluntary departure and employment authorization have been timely adjudicated and, except for a 5 week period in 1988, fully 80% of all requests have been granted.

The plaintiffs claim that several class members have been arrested and placed in deportation proceedings in retaliation for requesting work authorization and "participating" in this lawsuit. The district court

found that the INS's departure from its normal practices in starting deportation proceedings was ample evidence of bad faith prosecution.

The district court found that the plaintiffs suffer irreparable injury from the denial of their applications for voluntary departure and work authorization, and granted the injunction. The INS has agreed to abide by those parts of the injunction requiring adjudication of requests for voluntary departure within 60 days, consistent with 8 C.F.R. 274a.13(d), and requiring all denials of such requests to be made in writing as required by 8 C.F.R. 274a.13(c). The INS appeals, attacking those portions of the injunction specifying the grounds that may be considered in deciding requests for voluntary departure and employment authorization, and setting limits on the INS's ability to initiate deportation proceedings.

## II

The INS asserts that the district court had no authority to limit INS adjudicatory and prosecutorial discretion, arguing that a federal court can enjoin activities of the executive branch only where it is necessary to enforce specific legal rights. *See Allen v. Wright*, 468 U.S. 737, 761, 104 S.Ct. 3315, 3329, 82 L.Ed.2d 556 (1984).

> When a plaintiff seeks to enjoin the activity of a government agency, ..., his case must contend with 'the well-established rule that the Government has traditionally been granted the widest latitude in the "dispatch of its own internal affairs." ' [citations omitted].

*Allen v. Wright*, 468 U.S. 737, 761, 104 S.Ct. 3315, 3329–30, 82 L.Ed.2d 556 (1984) (quoting *Rizzo v. Goode*, 423 U.S. 362, 378–79, 96 S.Ct. 598, 607–08, 46 L.Ed.2d 561 (1976)). Whether a complaint states a sound basis for equitable relief depends upon whether it is brought to enforce specific legal obligations, rather than seeking "a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties." *Allen*, 104 S.Ct. at 3330 (hesitating to recognize standing in such cases).

■ INS argues that although the district court purported to find specific legal rights to enforce in the judicial review provisions of the Administrative Procedure Act, 5 U.S.C. §§ 701–706, those provisions are inapplicable to agency action if the action is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Agency action is committed to agency discretion by law—and hence beyond the reach of "abuse of discretion" review—if there are no statutory or regulatory provisions creating standards against which the agency action can be measured. *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985); *Achacoso–Sanchez v. I.N.S.*, 779 F.2d 1260, 1264 (7th Cir.1985).

There is no judicial review of agency action "where 'statutes [granting agency discretion] are drawn in such broad terms that in a given case there is no law to apply.' " *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945)). An agency's inaction in such a situation is necessarily exempt from judicial review because there are no meaningful standards against which to judge the agency's exercise of discretion. *Heckler v. Chaney*, 105 S.Ct. at 1655. "Without a definite indication that the agency has violated congressional will, any judicial interference in the agency's decisionmaking impermissibly substitutes the court's judgment for that of the regulatory agency whose decisionmaking authority is delegated by Congress." *Note: The Impact of Heckler v. Chaney on Judicial Review of Agency Decisions*, 86 Colum.L.Rev. 1247 (1986) (citing Stewart & Sunstein, *Public Programs and Private Rights*, 95 Harv.L.Rev. 1195, 1202–04, 1221–23 & n. 113, 1311–15 (1985)). In the absence of legislative standards, although class members might suffer injury from the denial of pre-hearing voluntary departure and employment authorization, such injury would not be legally cognizable. "When there are no rules or standards there is neither legal right nor legal wrong. There may be moral or prudential claims, but such claims are the province of other actors, be they administrators or legislators." *Achaeoso–Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir.1985).

■ The emphasis in *Chaney* was on the centrality of statutory language in providing judicially manageable standards. Review of agency nonenforcement decisions is permissible only where statutory language sets constraints on the agency's discretion.

■ There are no statutory standards for the court to apply in this case. There is nothing in the Immigration and Nationality Act expressly providing for the grant of employment authorization or pre-hearing voluntary departure to aliens who are the beneficiaries of approved visa petitions. Pre-hearing voluntary departure and employment authorization for the beneficiaries of approved visa petitions are purely creatures of regulation, and nothing in the Immigration and Nationality Act immunizes a deportable alien from deportation when a visa petition filed on his behalf is approved. *See Vargas v. I.N.S.*, 826 F.2d 1394, 1399 (5th Cir.1987); *Rubio De Cachu v. I.N.S.*, 568 F.2d 625, 628 (9th Cir.1977).

■ The plaintiffs argue that *Heckler v. Chaney's* holding of non-reviewability of enforcement decisions was a "narrow exception to the general principle of reviewability of agency action."[1] 470 U.S. at 838, 105 S.Ct. at 1659. They urge the availability of judicial review of agency action as set forth in *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). This case is closer to *Chaney* than to *Overton Park*, however, for in *Overton Park* the Court relied upon statutes expressly forbidding the Secretary to build a highway through a public park unless there were no feasible alternatives. 401 U.S. at 411, 91 S.Ct. at 821. Here, as in *Chaney*, the language of the statutes permitting voluntary departure and employment authorization is permissive rather than mandatory.

A general provision for pre-hearing voluntary departure is found in § 242(b) of the Act, 8 U.S.C. § 1252(b), which provides in pertinent part:

*In the discretion of the Attorney General* and under such regulations as he may prescribe, deportation proceedings, including issuance of a warrant of arrest, and a finding of deportability under this section need not be required in the case of any alien who admits to belonging to a class of aliens who are deportable under section 1251 of this title if such alien voluntarily departs from the United States at his own expense, or is removed at Government expense as hereinafter authorized, unless the Attorney General has reason to believe that such alien is deportable under paragraphs (4) to (7), (11), (12), (14) to (17), (18), or (19) of section 1251(a) of this title. If any alien who is authorized to depart voluntarily under the preceding sentence is financially unable to depart at his own expense, and the Attorney General deems his removal to be in the best interest of the United States, the expense of such removal may be paid from the appropriation for the enforcement of this chapter. (Emphasis added).

There are no standards found in this permissive statute that would provide courts with law to apply. Pre-hearing voluntary departure for visa applicants is permissive relief from deportation created by regulation. The regulation pertaining to voluntary departure for class members is 8 C.F.R. 242.5, which provides in pertinent part:

(a)(1) ... The authority contained in § 242(b) of the act to permit aliens to depart voluntarily from the United States may be exercised by district directors, district officers who are in charge of investigations, officers in charge, and chief patrol agents.

(2) ... Voluntary departure *may* be granted to any alien who is statutorily eligible ...

(vi) who is admissible to the United States as an immigrant and: (A) who is an immediate relative of a U.S. citizen, or (B) is otherwise exempt from the numerical limitation on immigrant visa issuance, or (C) has a priority date for an immi-

---

1. We have no reason to disagree with the conclusion that the decision in *Heckler v. Chaney* is a "narrow exception" to the usual presumption of judicial review of agency action. In the usual situation, Congress has statutorily authorized extensive standards that guide the exercise of an agency's discretion. If these standards are breached, the agency has abused its discretion, and an appellate court may render an appropriate remedy. On the other hand, if Congress has committed *complete* discretion in the agency to decide how and when it should exercise its authority, there exist no standards for a court to apply on review. In this narrow situation, judicial review is impermissible. *Chaney*, 470 U.S. at 839, 105 S.Ct. at 1660.

grant visa not more than 60 days later than the date shown in the latest Visa Office Bulletin and has applied for an immigrant visa at an American Consulate which has accepted jurisdiction over the case....

(3) ... Classes (vi)(A), (B), and (C) *may* be granted voluntary departure until the American consul is ready to issue an immigrant visa and, *in the discretion* of the district director, may be in increments of 30 days, conditioned upon continuing availability of an immigrant visa as shown in the latest Visa Office Bulletin and upon the alien's diligent pursuit of efforts to obtain the visa.

(b) The officers designated in paragraph (a) of this section *may deny or grant the application and determine the conditions under which the alien's departure shall be effected. An appeal shall not lie from a denial of an application for voluntary departure* under this section, but the denial shall be without prejudice to the alien's right to apply for relief from deportation under any provision of law. (Emphasis added).

8 U.S.C. § 1324a, *Unlawful Employment of Aliens,* which provides

(a) Making employment of unauthorized aliens unlawful

(1) In general

It is unlawful ... to hire ... for employment in the United States—

2. Section 274a.12 provides in pertinent part:

(c) ... Any alien within a class of aliens described in this section must apply for work authorization ...
(12) Any deportable alien granted voluntary departure, either prior to or after hearing, for reasons set forth in § 242.5 ... *may* be granted permission to be employed for that period of time prior to the date set for voluntary departure including any extension.... Factors which *may* be considered in adjudicating the employment application ... are:
  (i) The length of voluntary departure granted;
  (ii) The existence of a dependent spouse and/or children in the United States who rely on the alien for support;
  (iii) Whether there is a reasonable chance that legal status may ensue in the near future; and
  (iv) Whether there is a reasonable basis for consideration of discretionary relief.

(A) an alien knowing the alien is an unauthorized alien (as defined in subsection (h)(3) of this section) with respect to such employment ...

\* \* \* \* \* \*

(h)(3) Definition of unauthorized alien
... "unauthorized alien" means ... that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this Chapter or the Attorney General.

Other than 8 U.S.C. § 1188 pertaining to admission of temporary H–2A workers, who are non-immigrants, there are no statutes regulating employment authorization. Employment authorization is regulated by 8 C.F.R. § 274a.12 [2] and § 274a.13.[3] The regulatory framework requires that class members obtain voluntary departure before they are eligible to receive employment authorization. These regulations also provide no standards for a court to apply, as their language is completely permissive.

The regulations provide no significant guidance for measuring agency action. There are factors set forth in § 274a.12(c)(12) for adjudicating employment requests, but they are stated as those that "may" be considered. Even the district court acknowledged that the list is not exhaustive and that consideration of other factors is permissible. Similarly,

(d) ... Title 45—Public Welfare, Poverty Guidelines, 45 C.F.R. 1060.2 should be used as the basic criteria to establish eligibility for employment authorization when the alien's economic necessity is identified as a factor.... (Emphasis added).

3. Section 274a.13 provides in pertinent part:
(c) *Denial of application.* If the application is denied, the applicant shall be notified in writing of the decision and the reasons for the denial. There shall be no appeal from denial of the application.
(d) *Interim employment authorization.* The district director shall adjudicate the application for employment authorization within 60 days from the date of receipt of the application by the service or the date of receipt of a returned application by the service. Failure to complete the adjudication within 60 days will result in the grant of interim employment authorization for a period not to exceed 120 days.

§ 242.5(a)(3)(vi) conditions a grant of pre-hearing voluntary departure upon "diligent pursuit" of efforts to obtain a visa. There is nothing in the regulation to suggest that other factors considered by the INS adjudicators were impermissible, and nothing suggesting that "diligent pursuit" must be interpreted to permit a visa applicant to wait until he feels that he is ready for his visa interview rather than to require him to attend the interview when the consulate is ready to conduct it.

Where the Attorney General is granted discretionary authority to grant relief by a statute that "does not restrict the considerations which may be relied upon or the procedures by which the discretion should be exercised," his discretion has been described by the Supreme Court as "unfettered." *Jay v. Boyd*, 351 U.S. 345, 354, 76 S.Ct. 919, 924, 100 L.Ed. 1242 (1956); *see also Hernandez–Cordero v. INS*, 819 F.2d 558, 562 (5th Cir.1987). INS contends that because the Attorney General's discretion is unfettered when it is granted to him by statute with no restrictions upon its exercise, a discretion which has only a regulatory source is *a priori* unfettered.

The plaintiffs maintain that the Administrative Procedure Act provides for judicial enforcement of agency action, particularly an agency's violations of its own regulations. *United States v. Caceres*, 440 U.S. 741, 754, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733 (1979). They point to no regulation, however, that has been violated by the denial of either voluntary departure or work authorization for class members. Moreover, this court has recently held that "[t]he failure of an agency to follow its own regulations is not ... a per se denial of due process unless the regulation is required by the constitution or a statute." *Arzanipour v. INS*, 866 F.2d 743, 746 (5th

Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 63, 107 L.Ed.2d 30 (1989).[4] The Supreme Court has routinely applied an abuse of discretion standard in reviewing INS's exercise of discretion. *INS v. Abudu,* 485 U.S. 94, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) (abuse of discretion is correct standard to review refusal of the Board of Immigration Appeals to reopen deportation proceedings to apply for asylum); *INS v. Rios–Pineda,* 471 U.S. 444, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985) (same); *INS v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) (abuse of discretion standard applied to review of adjustment of status). The plaintiffs also point to several cases in this circuit where the actions of the INS have been reviewed for abuse of discretion. *Ashbrook–Simon–Hartley v. McLaughlin,* 863 F.2d 410 (5th Cir.1989) (labor certification); *Hernandez–Cordero v. INS,* 819 F.2d 558 (5th Cir.1987) (en banc) (suspension of deportation); *Marcello v. INS,* 694 F.2d 1033 (5th Cir.1983) (motion to reopen deportation proceedings); *Mashi v. INS,* 585 F.2d 1309 (5th Cir.1978) (INS's definition of "pursuit of full course of study" for non-immigrant student status). The defendants agree that there has been abuse of discretion review in other contexts, notably when the INS has refused to adjudicate and refused to exercise its discretion. But, because of an absence of statutory or regulatory standards here, a reviewing court is left without a basis for finding that discretion has been abused, and therefore any injunction ordering certain agency action is improper.

■ Plaintiffs argue that there are specific standards which must be applied to decisions relating to voluntary departure and employment authorization in light of the ultimate goal of family reunification. The plaintiffs rely on the District of Colum-

---

**4.** To be sure, the district court, saying that it wished to avoid needlessly deciding a constitutional question, "ground[ed] its decision only on the statutory bases asserted." The statutory bases that it invoked, however, were the judicial review provisions of the Administrative Procedure Act. Those provisions do not declare self-actuating substantive rights, but rather, like the procedural aspect of the due process clause, merely provide a vehicle for enforcing rights

which are declared elsewhere. Indeed, the court found it "extremely difficult" in this case "to separate [p]laintiffs' abuse of discretion claim under the Administrative Procedure Act from their procedural due process claim under the Fifth Amendment." The *Arzanipour* principle would therefore appear to apply as equally to a claim made under the Administrative Procedure Act as it does to a due process claim.

bia Circuit's decision in *Robbins v. Reagan*, 780 F.2d 37 (D.C.Cir.1985), where the court held:

> Even where there are no clear statutory guidelines, courts often are still able to discern from the statutory scheme a congressional intention to pursue a general goal. If the agency action is found not to be reasonably consistent with this goal, then the courts must invalidate it. The mere fact that a statute grants broad discretion to an agency does not render the agency's decisions completely unreviewable under the "committed to agency discretion by law" exception unless the statutory scheme, taken together with other relevant materials, provides absolutely no guidance as to how that discretion is to be exercised.

*Id.* at 45.

Although the visa preference provisions of the Act may have been motivated by Congressional interest in family unification, an even more central purpose might be "to protect American jobs." *See ILWU v. Meese*, 883 F.2d 1443, 1447 (9th Cir.1989). The government contends that any family reunification purpose in the Immigration and Nationality Act itself creates only a right to a preference in obtaining visas. This does not confer any additional rights. Nor do the operating instructions confer rights. Operating instructions "furnish only general guidance for service employees" and "generally, do not have the force of law" and "confer no substantive rights." *Dong Sik Kwon v. INS*, 646 F.2d 909, 918–19 (5th Cir.1981).

■ Congress exhibited no intent to confer a preferred status upon aliens whose presence here is illegal merely because a visa petition filed on their behalf has been approved. Moreover, INS argues, since the acquisition of lawful permanent residence is left entirely to the discretion of either the Attorney General's delegates or consular officials, Congress could hardly have intended visa petition approval to confer a preferred status creating standards against which INS's exercise of adjudicatory discretion over voluntary departure and work authorization requests can be mea-

sured. Granting an illegally present alien permission to remain and work in this country is a dispensation of mercy, and as no one is entitled to mercy, there are no standards by which judges may patrol its exercise.

The Supreme Court has held that when a statute allows the discretionary grant of mercy, not all those who meet the statutory standards to be eligible need be granted mercy. Suspension of deportation, like voluntary departure is such a grant of mercy. "*Suspension* of deportation is a matter of discretion and of administrative grace, not mere eligibility; discretion must be exercised even though statutory prerequisites have been met." *Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77, 77 S.Ct. 618, 621, 1 L.Ed.2d 652 (1957); *Jay v. Boyd*, 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956). *See also INS v. Rios–Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985) (Reversing Eighth Circuit case holding that plaintiffs had "made out a prima facie case of hardship, *and the factors relied upon by the BIA did not justify its refusal to reopen.*" *Id.* 105 S.Ct. at 2101). The standard of review is exceedingly narrow over the Attorney General's "unfettered discretion" over whether to suspend deportation once the statutory prerequisites are met, for "the ultimate decision whether to suspend deportation" is a matter of grace "similar to a Presidential pardon," and "judicial review ... is strictly limited because the subject is uniquely within the competence and power of the political branches." *Hernandez–Cordero v. INS*, 819 F.2d 558, 560–61 (5th Cir.1987).

■ While statutory or regulatory standards are necessary for direct review of particular administrative adjudicatory decisions, they are even more necessary as a basis for an inquiry into general administrative decision-making practices. Such an inquiry made without statutory or regulatory standards constitutes a proceeding "seek[ing] a restructuring of the apparatus established by the Executive Branch to fulfill its legal duties" which *Allen v. Wright* condemned.

## III

The INS also challenges that part of the injunction purporting to remedy retaliatory deportation. The district court used the three-part test set forth in *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir.1979), and determined that deportation proceedings against class members was a forbidden retaliation for the exercise of constitutionally-protected rights. *Wilson* involved an action to enjoin a state prosecution, and held that the plaintiffs had to show "first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and second, that the State's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct." If the plaintiffs successfully make that showing, the state had to show that "it would have reached the same decision as to whether to prosecute even had the impermissible purpose not been considered." 593 F.2d at 1387. The fact that the prosecution was brought "solely in response to" the constitutionally-protected conduct was not dispositive, since " 'solely in response to' and 'motivated by a purpose to retaliate for or deter' are not the same thing." *Id.* at 1388. Among the factors relevant to the third part of the test were "whether the State prosecution was undertaken with no hope for a valid conviction" and "the significance of the alleged criminal activity." *Id.* at 1387, n. 22.

The district court found that the plaintiffs had shown their conduct to be constitutionally protected since "[d]ue process protections apply to illegal aliens" and "all individuals in the United States have a First Amendment right to seek redress." The court then found that retaliation could be inferred because INS had departed from its normal practices. It found that normally deportation proceedings will be initiated in San Antonio against the beneficiary of an approved visa petition only if marriage fraud or a sham marriage is suspected or discovered or he has a "history of serious criminal conduct," the court noted that several class members were nevertheless placed in deportation proceedings after denial of their requests for employment authorization or voluntary departure despite a total lack of evidence that they were guilty of those things. The district court noted that because of a lack of docket control, class members come to the attention of INS only by appearing "voluntarily in pursuit of some form of relief," it concluded that the institution of deportation proceedings against these plaintiffs was "improperly motivated."

The INS contends that while all individuals may have a constitutional right to seek redress without regard to the legality of their presence here, there is no constitutional right to apply simply for discretionary relief from the consequences of an illegal action or status. A request for relief is not a petition for "redress of grievances" such as a damage suit for battery and false arrest like that filed in *Wilson*. Unlike parties sued for damages, who must defend the suit if they cannot force its dismissal, INS officials have little if any reason to deter requests for relief since they have discretion to deny them. Also, although the plaintiffs claimed to have suffered retaliation because of both their applications for discretionary relief and their participation in this lawsuit (which does fall into the category of seeking redress), the court based its finding only upon the applications for discretionary relief.

Improperly motivated institution of deportation proceedings cannot be inferred simply because plaintiffs had come to INS's attention only as a result of their appearance to request voluntary departure or employment authorization. Moreover, INS argues that whether the prosecution would have been instituted without consideration of the impermissible purpose turns upon, *inter alia*, whether it was instituted "with no hope of a valid conviction," or the significance of the alleged criminal activity which led to its institution. INS maintains that illegal presence in this country is a significant violation of the immigration laws, and that consequently any deportation order would unquestionably have been legally valid.

■ The district court's fundamental error is the attempt to issue a class-wide restraint on the basis of a quintessentially individual problem. Whether a deportation is retaliatory depends upon the peculiar facts of the individual case; they cannot be generalized to interdict all future prosecutions against an entire class of unknown individuals, at least not on this record.

IV

The INS does not challenge paragraphs 1 and 2 of the injunction. Paragraphs 3 and 4 restrain administrative actions committed to agency discretion by law, and exceed judicial authority. Accordingly, the challenged portions of the injunction are vacated.

Affirm in part and vacate in part.

GOLDBERG, Circuit Judge, dissenting:
*The quality of mercy is not strain'd,*
*It droppeth as the gentle rain from Heaven*
*Upon the place beneath: it is twice blest;*
*It blesseth him that gives and him that takes;*
*'Tis mightiest in the mightiest; it becomes*
*The throne'd monarch better than his crown ...*
*Mercy is above this sceptred sway;*
*It is enthrone'd in the hearts of kings,*
*It is an attribute to God himself.*[1]

I agree with the district court's result and the spirit of its reasoning. Inspiring our constitution, mercy emanates from the empyrean, not from the executive branch, or in this case, the attorney general's scepter. I thus respectfully dissent.

---

1. Shakespeare: *The Merchant of Venice,* IV, c. 1597.