EDITH BROWN CLEMENT, Circuit Judge, joined by STEWART, Chief Judge, and JOLLY, DAVIS, JONES, SMITH, PRADO *, OWEN, ELROD, SOUTHWICK, HAYNES *, HIGGINSON, and COSTA, Circuit Judges:
The court voted to rehear this case en banc to consider whether Innocent Ruta-hagara Batamula has made a sufficient showing of prejudice in his ineffective assistance of counsel claim to survive summary judgment. We hold that Batamula failed to allege a non-frivolous prejudice claim and accordingly we AFFIRM the district court.
I.
Batamula, a Tanzanian citizen, entered the United States on a student visa in 2001 and remained in the country after his visa expired. He married a United States citizen, applied for a change in his immigration status, and, in 2008, applied for and obtained a United States passport for his biological son, B.B.,[1] a citizen and then-resident of Tanzania. To secure the passport, Batamula used his son’s photograph along with the name and birth date of a different Tanzanian child, Z.M., who was a *239 United States citizen. Approximately three years later, Z.M’s parents applied for a passport for their son only to discover -that a passport had already been issued, displaying the photograph of someone else’s child. When questioned by federal agents, Batamula denied knowing the boy pictured in the fraudulent passport.
Batamula was indicted on a single count of making a false statement to a United States agent under 18 U.S.C. § 1001. By superseding criminal information, he was charged with making a false statement to a federal agent and an additional count of making a false statement in an application for a United States passport in violation of 18 U.S.C. § 1542. Batamula pleaded guilty pursuant to a written plea agreement. During the plea proceeding, Bata-mula informed the court that he had spoken with his attorney about the charges approximately ten times and that he was “fully satisfied” with his attorney’s advice and counsel. Before accepting the plea, the district court judge admonished both Batamula and a second defendant present at the proceedings, stating: “The offenses that you’re pleading guilty to are felonies: That means that each of you will likely be deported after you serve your sentence.” The court found Batamula’s guilty plea knowing and voluntary, accepted his guilty plea as to both counts, and sentenced him to time served, one year of supervised release, and a $2000 fine.
Batamula then moved to set aside his conviction and sentence pursuant to 28 U.S.C. § 2255, claiming that his attorney provided ineffective counsel under Padilla v. Kentucky, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), by failing to advise him that pleading guilty to both charges could result in his deportation. In support of his § 2255 motion, Batamula averred in a sworn affidavit that if his attorney had advised him of the mandatory deportation consequences of pleading guilty, then he would have refused to “make the plea,” would have pleaded not guilty, and would have insisted on going to trial “as that would have been [his] only alternative to avoid deportation.” Batamula attached an affidavit from his trial counsel, which stated that the attorney did not advise him that pleading guilty to both charges would make him mandatorily deportable. He also submitted an affidavit from his immigration attorney, which explained that his guilty plea rendered him presumptively deportable under 8 U.S.C. § 1227(a)(2)(A)(ii) because his convictions are considered crimes of moral turpitude.
The district court granted the Government’s motion for summary judgment and denied Batamula’s § 2255 motion without an evidentiary hearing, finding that Bata-mula had “shown no right to relief.”[2] The court reasoned that “even if Batamula’s attorney was deficient in failing to inform [him] of the immigration consequences of his. guilty plea,” Batamula failed to show the deficiency prejudiced him. The court concluded that Batamula did know about the deportation consequences because “before Accepting his guilty plea the court informed him that he would likely be deported after he served his sentence.” This court granted Batamula a COA, and in a per curiam opinion reversed the district court on the narrow question of whether a judicial warning of likely deportation alone forecloses a defendant’s claim of prejudice. Thereafter, we granted en banc rehearing.
II.
We review de novo a district court’s legal conclusions in denying a mo *240 tion under 28 U.S.C. § 2255. United States v. Ghali, 699 F.3d 845, 846 (5th Cir.2012). We review factual findings for clear error. United States v. Cavitt, 550 F.3d 430, 435 (5th Cir.2008). “[W]e may affirm for any reason supported by the record, even if not relied on by the district court.” United States v. Gonzalez, 592 F.3d 675, 681 (5th Cir.2009).
Batamula’s claim for relief turns on whether he affirmatively showed that counsel’s deficient advice regarding the deportation consequences of his guilty plea resulted in prejudice.[3] He alleges that: (1) instead of insisting on trial on the original one-count indictment, he pleaded guilty to the two charges; (2) his “plea made his deportation presumptively mandatory”; (3) his “lawyer did not advise him that [his] guilty plea ... would render his deportation presumptively mandatory”; and (4) had his lawyer “informed him about the immigration consequences of his plea, [he] would have plead[ed] not guilty and insisted on going to trial or sought to eliminate one count” in the plea deal. Ba-tamula’s allegations are supported by the affidavits he filed with his petition.
To avoid summary dismissal and obtain a hearing, however, Batamula had to allege a non-frivolous prejudice claim. See Guerra, 588 F.2d at 521. Establishing prejudice under Strickland, requires Bata-mula to show a reasonable probability that “but for counsel’s errors, he would not have pleaded guilty and would have insisted on going to trial.” Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In other words, Batamula has to demonstrate that going to trial under the óne-count indictment would have given him a reasonable chance of obtaining a more favorable result. The court’s prediction about whether the defendant had a reasonable chance of obtaining a more favorable result “should be made objectively, without regard for the ‘idiosyncrasies of the particular decisionmaker.’ ” Id. at 60, 106 S.Ct. 366 (quoting Strickland, 466 U.S. at 695, 104 S.Ct. 2052); see also Pilla v. United States, 668 F.3d 368, 373 (6th Cir.2012) (“[Defendant] cannot [show prejudice] merely by telling us now that she would have gone to trial then if she had gotten different advice. The test is objective, not subjective[.]”).
We explained, in United States v. Kayode, that “[i]n assessing prejudice, we consider the totality of the circumstances.” 777 F.3d 719, 725 (5th Cir.2014).[4] Unlike the defendant in Kayode, Batamula did “aver that he would have gone to trial had he known of the immigration consequences of his plea.” Id. at 725-26. On the other *241 hand, Batamula did not attempt to show that he was likely to succeed at trial. Indeed, in response to the Government’s argument that his chances at trial were slim, Batamula claimed that questioning the likelihood of success at trial was “beyond the prejudice prong of Strickland.” And on this point, the record shows that at least two federal agents could testify at trial that Batamula lied to them by claiming not to recognize a picture of his own son. Batamula does not address the risks that he would have faced at trial, while the Government points to evidence that going to trial would have increased the length of his sentence. Batamula did not attempt to show that he had significant connections with the United States, and the record suggests that he does not have the depth of connection that we found favored the defendant in Kayode. Batamula did not move to withdraw his plea, and thus never mentioned that factor in his habeas petition. Most importantly, the district court admonished Batamula and another defendant that they were pleading guilty to felonies, and thus “each of [them] [would] likely be deported after you serve your sentence.” While the district court did not examine Batamula as thoroughly on the deportation issue as the district court did in Kayode, cf. 777 F.3d at 729, the district court’s warning to Batamula that deportation was “likely” was stronger than the court’s admonishment in Kayode that pleading guilty “may lead to your deportation,” id.[5] See McCarthy v. United States, 394 U.S. 459, 465, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) (“[T]he more meticulously [Rule 11] is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas.”); Kayode, 777 F.3d at 729.
Comparing this case to Kayode, Bata-mula’s prejudice showing is the weaker of the two. Before the district court, Bata-mula — who has the burden to establish prejudice — made allegations and adduced evidence suggesting only that he would have proceeded to trial had he known the deportation consequences of his conviction. Batamula failed to adduce any other evidence relevant to the prejudice determination. The district court did not err by concluding, under a totality of the circumstances test, that “Batamula ha[d] not shown that [his attorney’s] deficiency prejudiced him.” The district court was not required to cast about in the record looking for allegations and evidence concerning other potential factors mentioned in Kay-ode;[6] the court rightly held Batamula to his burden.
Stepping back and addressing the totality of the circumstances shows that Bata-mula failed to allege even a rational explanation for his desire to proceed to trial. Batamula’s argument is that, with competent advice from counsel, he “could have faced trial on a single count and avoided *242 an automatic deportation.” This argument is based on the fact that, under 8 U.S.C. § 1227(a)(2)(A), an alien who has been in the country for more than five years is deportable only if he commits two separate crimes involving moral turpitude.[7]
Batamula’s theory of prejudice relies on two dubious assertions: first, that he was not deportable under § 1227 at the time he pleaded guilty; and second, that if he had refused to plead guilty, the Government would have gone to trial under the one-count indictment without adding additional charges. The Government argues that Ba-tamula failed to show prejudice because he was already deportable for having overstayed his visa under § 1227(a)(1)(C)®. The record and controlling law unequivocally support the Government’s position. Because the undisputed record evidence shows that Batamula’s first assertion is false, we do not address the second.
Section 1227(a)(1)(C)® provides that “[a]ny alien who was admitted as a nonim-migrant and who has failed to maintain the nonimmigrant status in which the alien was admitted ... is deportable.” Batamu-la is deportable under this subsection if he “was admitted as a nonimmigrant for a temporary period, ... the period has elapsed® and ... [he] has not departed.” Equan v. INS, 844 F.2d 276, 278 (5th Cir.1988). Undisputed record 'evidence shows that Batamula entered the U.S. on a non-immigrant F-l student visa, the visa expired, and Batamula did not depart the country. Accordingly, Batamula’s deport-ability under § 1227 was a fait accompli before he pleaded guilty under the two-count information. Proceeding to trial under the one-count indictment would not change his deportable status. Under these circumstances, Batamula has failed to put forward a rational explanation of his desire to proceed to trial. See Padilla, 559 U.S. at 372, 130 S.Ct. 1473.
Batamula contends that the Government’s “claim that [he] was in a class of deportable alien[s] under 8 U.S.C. § 1227(a)(1)(C)® ignores his marriage, or infers too much from a limited record concerning a petition for alien relative (I-130).” This is mistaken. First, even assuming — contrary to the undisputed record evidence — that United States Citizenship and Immigration Services (“USCIS”) was not revoking Batamula’s approved I-130 petition, “nothing in the Immigration and Nationality Act immunizes a deporta-ble alien from deportation when a[n] [I-130] visa petition filed on his behalf is approved.” Perales v. Casillas, 903 F.2d 1043, 1048 (5th Cir.1990).[8] Accordingly, *243 whether or not Batamula’s marriage is bona fide,[9] his marriage and approved I-130 petition do not alter his deportable status under § 1227(a)(l)(C)(i). Second, Batamula fails to even allege, much less to adduce any evidence, that he has submitted an 1-485 petition for adjustment of non-immigrant status.[10] Thus, this court has no basis to infer that Batamula’s marriage and approved 1-130 petition have any effect on his deportable status under § 1227(a)(l)(C)(i). Because Batamula was already deportable under § 1227(a)(l)(C)(i) before he pleaded guilty under the two-count information, it would not have been rational for him to proceed to trial in the hopes of avoiding deportability under another subsection of § 1227. Batamula’s failure to put forth even a rational explanation for his desire to proceed to trial means that he did not carry his burden to show prejudice.
III.
Batamula failed to allege facts or adduce evidence showing that the outcome of the plea process would have been different with competent advice. The record conclusively established that he was deporta-ble before his guilty plea, and he remained so afterward. Thus, his prejudice claim is frivolous. The district court was correct to summarily dismiss the claim without holding an evidentiary hearing. We AFFIRM.
JAMES L. DENNIS, Circuit Judge,

 Concurring in the judgment only.

. To protect the identity of the minor children involved, we refer to them by their first and last initials.

. See United States v. Guerra, 588 F.2d 519, 521 (5th Cir.1979) (explaining that district courts may dismiss § 2255 petitions without a hearing when the petitioner presents a "patently frivolous claim[ ]”).

. On appeal, the parties focus their arguments on whether Batamula can establish prejudice as a result of his counsel's performance. Accordingly, we do not address whether counsel provided deficient representation, and confine our analysis to the second Strickland. prong — whether Batamula has made a sufficient showing of prejudice. See Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984).

. In Kayode, we also mentioned a non-exhaustive list of potentially relevant factors, including: (1) the defendant's "evidence to support his assertion” that he would have gone to trial had he known the likely deportation consequences of his plea; (2) "his likelihood of success at trial”; (3) "the risks [he] would have faced at trial”; (4) his "representations about his desire to retract his plea”; (5) "his connections to the United States”; and (6) "the district court’s admonishments.” Id. Although Kayode was not published until after this case was fully briefed on appeal, it was established at the time Batamula filed his habeas petition that the prejudice inquiry "requires [a] probing and fact-specific analysis.” Sears v. Upton, 561 U.S. 945, 955, 130 S.Ct. 3259, 177 L.Ed.2d 1025 (2010). Batamula cannot be excused for failing to adduce available evidence that was relevant to the prejudice analysis.

. Here, the district court's analysis mirrors the analysis cited by Kayode as an example of a fact-intensive inquiry. 777 F.3d at 729 n. 9 (citing DeVille v. Whitley, 21 F.3d 654, 660 (5th Cir.1994)). In DeVille, a panel of this court reasoned as follows:
Even assuming that Appellants’ counsel were in some respect deficient in their explanation of the motion to suppress, the state trial court asked both petitioners whether they understood that they were entitled to a suppression hearing and whether they were willing to waive that hearing. Both Appellants responded that they understood and were willing to waive the right to the hearing. The court's admonishment cured any deficiency in counsel’s performance and made the error harmless.
21 F.3d at 660.

. See Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir.1998).

. Section 1227(a)(2)(A)(i) provides that "[a]ny alien who — (I) is convicted of a crime involving moral turpitude committed within five years ... after the date of admission, and (II) is convicted of a crime for which a sentence of one year or longer may be imposed, is deportable.” Section 1227(a)(2)(A)(ii) provides that "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct ... is deportable.”

. Accord Vasquez de Alcantar v. Holder, 645 F.3d 1097, 1104-05 (9th Cir.2011) (quoting Perales for same proposition); United States v. Atandi, 376 F.3d 1186, 1192 (10th Cir.2004) (stating that "courts have consistently held that an alien is not authorized to be in the United States simply because an 1-130 visa petition had been filed on his or her behalf and/or approved by the government,” and quoting Perales for same proposition); Der Rong Chour v. INS, 578 F.2d 464, 468 (2d Cir.1978) (holding that "the approval of the [petitioner’s] 1-130 petition [did not] permit him to remain in' the United States”); see also United States v. Elrawy, 448 F.3d 309, 314 (5th Cir.2006) (explaining that, even after I-130 petition is approved, "an alien who has acquired unlawful or illegal status ... by overstaying a visa ... cannot relinquish that illegal status until his [1-485] application for adjustment of status is approved”).

. The record evidence suggests that the marriage is not bona fide. Two prior applications for residency had been denied for failure to meet the burden of proof of marriage, and Batamula’s third application was in the process of being denied for marriage fraud.

. See generally National Immigration Project of the National Lawyers Guild, 1 Immigration Law & Defense § 4:145, Westlaw (database updated Feb. 2015) (explaining that alien files application for adjustment of status after preliminary procedures, such as getting 1-130 petition approved, have been completed); id. § 4:149 (discussing Form 1-485 for adjustment of status).