# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 1, 2022

Lyle W. Cayce
Clerk

No. 20-11168

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

SHABBAR RAFIQ,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-350

Before SMITH, WIENER, and SOUTHWICK, *Circuit Judges*.
LESLIE H. SOUTHWICK, *Circuit Judge*:*

Shabbar Rafiq, federal prisoner # 54757-177, pled guilty, without the benefit of a plea agreement, to conspiracy to distribute a controlled substance and a controlled substance analogue in violation of 21 U.S.C. § 846. After exhausting his direct appeal, Rafiq petitioned for a writ of habeas corpus, which was denied. We granted a Certificate of Appealability ("COA") to

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-11168

Rafiq with respect to his claim that his counsel was ineffective for failing to advise him of the removal consequence of his guilty plea. Concluding that Rafiq was not prejudiced by any potential error by his counsel, we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

Shabbar Rafiq moved to the United States in 1999. On December 20, 2016, he pled guilty to one count of conspiracy to distribute a controlled substance and a controlled substance analogue, in violation of 21 U.S.C. § 846. During rearraignment, the district court asked Rafiq if he was a United States citizen, and he replied that he was. The district court asked another codefendant if he was a United States citizen and when that codefendant replied in the negative, the district court advised him that his conviction could result in removal and that removal could be mandatory or certain.

The presentence report ("PSR"), however, indicated that Rafiq was a legal permanent resident and a citizen of Pakistan. It advised that he was removable pursuant to 8 U.S.C. § 1227 because he was an alien and citizen of Pakistan who had been convicted of a drug trafficking offense. The PSR also stated that, during the course of an investigation by the Drug Enforcement Administration ("DEA"), it was learned via Immigration and Customs Enforcement ("ICE") officials that Rafiq's marriage to a United States citizen was fraudulent. Rafiq's written objections to the PSR stated, among other things, that he was a naturalized United States citizen and that his marriage was not fraudulent.

In its response to his objections, the Government stated that, "according to ICE, a final ruling on the defendant's immigration status ha[d] not been made because of a finding that his marriage is fraudulent." The probation officer added that ICE had verified that Rafiq had never been naturalized as a United States citizen and that it had ruled his marriage fraudulent. The probation officer also stated that Rafiq's objection to his immigration status

had no impact on the guideline calculations. Rafiq subsequently withdrew his objections relating to his immigration status and to whether his marriage was fraudulent.

Before sentencing, Rafiq also signed an order setting out additional terms of supervised release, including that "upon the completion of the sentence of imprisonment, the defendant shall be surrendered to a duly-authorized immigration official for deportation in accordance with the established procedures set out by the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq." At sentencing, Rafiq's counsel acknowledged that he had reviewed the PSR and addendum to the PSR with Rafiq. Rafiq was sentenced below the 210–240-month recommended guidelines range to 144 months in prison because of a U.S.S.G. § 5K1.1 downward departure, and he was sentenced to three years of supervised release. On appeal, Rafiq challenged the forfeiture order that was entered by the district court. *See United States v. Rafiq*, 745 F. App'x 241 (5th Cir. 2018) (unpublished). The order was affirmed. *See id.*

In his original Section 2255 motion, Rafiq raised various claims, including that counsel was ineffective for failing to advise him of the removal consequence of his guilty plea, and he contended that, if he had known of that consequence, he would not have pled guilty. In support of his Section 2255 motion, he submitted his own affidavit as well as affidavits from Zainab Rafiq and Babar Butt. In relevant part, Rafiq's affidavit stated that, before entering his guilty plea, he told his retained counsel, David Finn, that he was a legal permanent resident, that he was married to a United States citizen, and that he had recently taken a citizenship test. Finn reportedly responded that, in criminal cases, there was no permanent resident status. Further, he said that a criminal defendant was either a "citizen" or an "immigrant." Finn also told him that because Rafiq had taken the citizenship test and was married to a United States citizen, he was a United States citizen and did not need to worry about removal. Zainab Rafiq's affidavit did not address Rafiq's

immigration status. Babar Butt's affidavit stated that he heard Rafiq tell Finn that he was a green card holder and that he was married to a United States citizen. Finn reportedly replied that Rafiq did not have to worry about immigration.

The Government filed a response to Rafiq's Section 2255 motion and submitted an affidavit from Finn, Rafiq's counsel. Finn's affidavit stated that Rafiq "insisted that he was a United States citizen"; Finn had made clear to Rafiq that he was not an immigration attorney; and that he advised Rafiq that if he had immigration issues, he should consult an immigration attorney. Rafiq filed a reply to the Government's response and a supplemental brief in support of his Section 2255 motion. In his reply, he requested an evidentiary hearing. He also stated that, consistent with his understanding and counsel's advice, he advised the district court at rearraignment that he was a United States citizen.

The district court denied Rafiq's motion on the merits and denied him a COA. In relevant part, the district court found the record established that Rafiq was aware of the immigration consequences of his guilty plea and that, instead of trying to withdraw his plea, he proceeded with it, which therefore negated his claim of ineffective assistance of counsel. Rafiq filed a timely notice of appeal and a motion for a COA, which included claims that counsel was ineffective for failing to advise him of the immigration consequences of his plea and that the district court erred in not holding an evidentiary hearing. This court granted Rafiq a COA with respect to whether his counsel was ineffective for failing to advise him of the removal consequence of his guilty plea. A COA was denied in all other respects.

## DISCUSSION

When reviewing a district court's denial of a Section 2255 motion, this court reviews the district court's legal conclusions *de novo* and its factual

findings for clear error. *United States v. Kayode*, 777 F.3d 719, 722–23 (5th Cir. 2014).

On appeal, Rafiq contends that his guilty plea should be vacated based upon counsel's failure to warn him of the immigration consequences of his plea.[1] With respect to the prejudice prong of his ineffective assistance claim, he maintains that neither the strength of the evidence against him nor his contemporaneous knowledge of the immigration consequences of his plea, standing alone, forecloses a claim of prejudice from counsel's alleged deficient performance. He further asserts that the district court should have considered the totality of the evidence and that the factors the district court did consider or should have considered weigh in his favor.

Counsel's failure to advise a noncitizen defendant that his guilty plea carries a risk of removal implicates the right to effective assistance of counsel. *Padilla v. Kentucky*, 559 U.S. 356, 366–69 (2010). Still, prevailing on an ineffective assistance of counsel claim is "never an easy task." *See id.* at 371. To raise a viable claim of ineffective assistance of counsel, a defendant must demonstrate both that his attorney rendered a deficient performance and that this substandard performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Important to our analysis, a failure to establish either deficient performance or prejudice defeats an ineffective assistance claim. *Id.* at 697.

In the context of a guilty plea, a movant shows *Strickland* prejudice by establishing "that there is a reasonable probability that, but for counsel's

---

[1] We do not review Rafiq's complaint that the district court's failed to comply with Rule 11(b)(1)(O) by not informing him of the immigration consequences of his plea as this complaint is outside the scope of the COA. *See Kayode*, 777 F.3d at 722 (stating that this court's review "is limited to the issues enumerated in the COA") (quotation marks and citation omitted).

errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The movant's allegation that he would not have pled guilty must be reasonable. *See Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) (noting that the prisoner's bare allegation that he would not have pled guilty was insufficient to establish prejudice). "In other words," a defendant must "demonstrate that going to trial . . . would have given him a reasonable chance of obtaining a more favorable result." *United States v. Batamula*, 823 F.3d 237, 240 (5th Cir. 2016) (en banc).

"We consider a number of factors when determining whether, under the totality of the circumstances, a defendant has established prejudice under *Strickland*." *Kayode*, 777 F.3d at 725. These factors, though, "are not the only factors that may be considered under the prejudice analysis" and are not necessarily "exhaustive." *See id.* at 725 n.2.

First, we often consider whether the defendant has put on evidence supporting his assertion that he would have gone to trial rather than pled guilty. *See id.* at 725–26. The Supreme Court has cautioned that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant" that his attorney's ineffectiveness is what caused him to plead guilty. *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017). Instead, courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.*

The contemporaneous evidence here does not support that Rafiq would have withdrawn his guilty plea. Aside from the obvious and important fact that Rafiq "did not move to withdraw his guilty plea," testimony from Special Agent John Perfetti demonstrates that Rafiq was aware that his marriage potentially was fraudulent — indeed, Rafiq explicitly stated on a call that the marriage was "all just about immigration status." *See Batamula*, 823 F.3d at 241. Further, Perfetti testified that Rafiq had forged a bank statement

to obtain legal status in this country.  Contrary to Rafiq's assertions, the record supports that he was aware that his citizenship was suspect.

Perhaps more telling is the PSR.  That document, which was reviewed with Rafiq by his counsel, clearly stated that Rafiq faced removal for his drug trafficking offense.  The record reflects that, while Rafiq initially challenged the PSR's findings about his citizenship, those objections were withdrawn.  The PSR was then revised to reflect that Rafiq had "provided no evidence" to support his citizenship.  Another document setting out addition terms of release, signed by Rafiq, also included a clear indication that Rafiq was to be deported upon the completion of his prison term.  While Rafiq avers that his counsel "misrepresent[ed]" immigration issues to him, the clear language of these documents supports that Rafiq was at least on notice of his likely removal.

Also important is that Rafiq was present when the district court admonished one of his codefendants that, because he was not a United States citizen, he could be subject to mandatory or certain removal.  Combining this fact with Rafiq's reticence on this issue at sentencing, well after he was aware of the PSR's conclusions, we cannot conclude that the contemporaneous evidence weighs in favor of prejudice.

We also consider "whether the defendant has demonstrated that he was likely to succeed at trial." *Kayode*, 777 F.3d at 726.  Here, the district court explicitly considered this factor with respect to a separate ineffective assistance of counsel claim and perhaps implicitly considered it with respect to the claim at issue here.  The district court identified the "extensive" evidence relating to Rafiq's drug trafficking, including conversations about drug sales, text messages, seizures of large quantities of drugs, and Rafiq's instructions to his wife to destroy the drugs after his arrest.

No. 20-11168

While Rafiq makes a variety of arguments about the charge that he distributed controlled substances analogues, he neglects the fact that he also pled guilty to distributing a controlled substance. Thus, Rafiq offers little in the way of a response to this overwhelming evidence of guilt on this charge. Moreover, another defendant in the same conspiracy scheme elected to go to trial and was convicted. *See United States v. Al Haj*, 731 F. App'x 377, 379 (5th Cir. 2018) (affirming jury's verdict). Rafiq has not demonstrated a likelihood of success at trial, and thus this factor weighs against a finding of prejudice.

We also review "the risks faced by a defendant in selecting a trial rather than a plea bargain." *Kayode*, 777 F.3d at 726–27. The risks here, as the district court noted, were sizable. Rafiq faced a recommended guideline range of 210–240 months, but as a result of his acceptance of responsibility and substantial assistance, he received a downward departure to a significantly shorter sentence of 144 months. Had he proceeded to trial, his receiving this shorter sentence would have been questionable.

Rafiq argues, though, that the higher sentence is not necessarily dispositive in this case where the alternative is deportation, citing *Lee*, 137 S. Ct. at 1967. We are not persuaded by Rafiq's reliance on *Lee*. That case involved a defendant who had (1) repeatedly raised removal issues to his attorney; (2) clearly expressed that removal was his dominant concern; and (3) stated, with confirmation from his attorney, that he would have gone to trial had he known deportation was a possible consequence. *Id.* at 1967–68. Lee also faced a minor increase in his potential sentence — one or two years — if he proceeded to trial. *Id.* at 1969. Rafiq has not provided nearly the same quantum of evidence supporting his concerns about removal. Not only did he largely remain silent about deportation consequences, including after he was aware of them, but he also faced a significantly longer sentence were

he to face trial.  The significant risks of trial weigh against a finding of prejudice here.

Rafiq also argues that, in evaluating his ineffective assistance of counsel claim, the district court erred in failing to consider whether he could have negotiated a plea deal that involved lesser or no immigration consequences.  Even if this consideration was enumerated in *Kayode*, it does not weigh necessarily in favor of a finding of prejudice here.  Although he notes that one of his codefendants was offered and accepted a plea deal for misprision of a felony, he points to nothing showing a reasonable probability that the prosecution would have accepted and the district court would have approved a deal that had no adverse immigration consequences.  Moreover, the codefendant who received the deal was only a store clerk who sold drugs provided by others in the conspiracy — not an organizer or leader like Rafiq.  Once again, this suggested factor does not weigh heavily in favor of a finding of prejudice.

Finally, we consider the quality of the defendant's connections to the United States.  *Kayode*, 777 F.3d at 727.  Rafiq has resided in the United States since 1999 and his immediate family resides here.  This factor thus weighs in favor of a finding of prejudice.  *See Batamula*, 823 F.3d at 241.

Despite Rafiq's connections to this country, we cannot conclude that Rafiq has shown that he was prejudiced by any potential counsel error regarding the immigration consequences of his guilty plea.  The overwhelming evidence of his involvement in the drug trafficking scheme, the immense risks of a trial, and the contemporaneous evidence from sentencing, including his failure to even attempt a withdrawal of his guilty plea, do not support that he was prejudiced.  Consequently, he cannot meet his burden under *Strickland*'s second prong.

AFFIRMED.